MERRIMAN et al. v. CHICAGO & E. I. R. CO. et al. (two cases).

(Circuit Court of Appeals, Seventh Circuit. November 27, 1894.)

No. 69.

1. APPEALABLE JUDGMENT—FINAL DECREE—WHAT CONSTITUTES.

In an action against a railroad company, one W., and others, for a discovery, to redeem, etc., there was a decree dismissing the bill as to such company, and requiring W. to account for certain bonds. It provided that he was entitled to credit for such sum as might be rightfully due him; and that, it appearing that there was pending in a certain state court a suit in equity in which W. was defendant, touching such bonds, that an accounting had been had in respect to them, and that a special master had made a report, which had not been acted on by such court, execution of the decree should be stayed until final determination of such suit in the state court, or until further order of the court making the decree. *Held*, that the decree, as to W., was interlocutory, and not final, and was not appealable.

2. EQUITY—PLEADING—ORIGINAL BILL—CONSTRUCTION.

A bill by judgment creditors of the D. R. Company against such company, the E. I. R. Company, and others alleged in substance, but in great detail, the execution by the D. R. Company of various invalid mortgages and trust deeds, the void foreclosure and sale of the property, and the possession, under such sale and other illegal proceedings and transactions, of the E. I. R. Company; that the latter company acquired no title to such property; and that it was about to issue to the attorneys, officers, and stockholders of the D. R. Company certain bonds, in consideration of a collusive agreement by them to abandon a contest being made by them for such property, etc. The bill prayed for a discovery and accounting; for an injunction restraining the sale or delivery of such bonds; that all

the property in possession of the E. I. R. Company be decreed to be the property of the D. R. Company, subject only to the right of the former to hold it as mortgagees in possession under an unforeclosed mortgage; that the amount due the mortgagees be ascertained; that plaintiffs be allowed to redeem, and be subrogated to the rights of the mortgagees; and that they have general relief. *Held,* that such bill should be treated as a bill to redeem, and not as a creditors' bill.

3. SAME—MULTIFARIOUSNESS—WHAT CONSTITUTES.

A bill by a judgment creditor of a railroad company, against such company and another railroad company, to redeem property in possession of the latter company as mortgagee, on the ground that such possession was fraudulently acquired, and also to subject to payment of complainant's judgment certain bonds about to be issued by the latter company to the attorneys, officers, and stockholders of the former company, in order to confirm the title to such property, is self-contradictory and multifarious, and cannot be maintained.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Two bills heard together,—one by Corydon C. Merriman and others against the Chicago & Eastern Illinois Railroad Company, and the other by the same plaintiffs against the Chicago & Eastern Illinois Railroad Company, Edwin Walker, Joseph E. Young, and the National City Bank of Ottawa, Ill. From the decree, complainants appeal. Affirmed.

The decree from which this appeal was taken was rendered by Mr. Justice Harlan, sitting in the circuit court, on the 18th of June, 1892. It dismissed the original and amended and supplemental bills of complaint as to the appellee the Chicago & Eastern Illinois Railroad Company, hereinafter called the "Eastern Illinois Company," for want of equity, and decreed that the appellees Edwin Walker and Joseph E. Young should account for certain bonds received by them respectively from the Eastern Illinois Company, which were adjudged to have been assets belonging to the Chicago, Danville & Vincennes Railroad Company, hereinafter called the "Danville Company," which the appellants, as judgment creditors of that company, were entitled to have applied in satisfaction of their judgments. The execution of the decree against Walker was stayed until the final determination of a cause pending in the circuit court of Cook county, in the state of Illinois, brought by other parties against Walker and Young, after the commencement of this suit. From this decree two appeals were prayed and allowed. The first is from that part of the decree which dismissed the original, amended, and supplemental bills of complaint as to the Eastern Illinois Company; and the second is from the entire decree. On the hearing of the appeal in this court two errors are pointed out: (1) In staying the execution of the decree as to the appellee Walker; (2) in dismissing the original, amended, and supplemental bills of complaint as to the Eastern Illinois Company.

(1) So far as the appellee Walker is concerned, the decree is as follows: "That the said defendant Edwin Walker, on or about the 6th day of November, 1884, received one hundred and twenty-seven of said bonds, of the par value of one thousand dollars each, together with interest coupons thereon, and that the said defendant Walker should account for the said bonds and coupons so received by him, together with interest thereon. But said Walker is entitled to credit for such sum or sums as may be rightfully due him. It appearing that there is now pending in the circuit court of Cook county, in the state of Illinois, a suit in equity in which one John McNanomy is complainant, and said Walker and Young defendants, touching the said bonds in the decree mentioned, which said suit was commenced prior to the filing herein, on the 14th of December, 1875, of the supplemental bill in lieu of the original bill, and it also appearing that an accounting had been had in said case in respect to said bonds, and that a report thereon has been made

by the special master, which report has not been acted upon, it is therefore ordered that the execution of the foregoing decree, settling the rights of the complainants and the defendant Walker in this suit, be stayed until the final determination of said suit in the state court, or until the further order of this court. The court reserves the right to allow such further proceedings in this case between the complainants and said Walker as may become necessary or proper by reason of the final determination of the case in the state court." The appellee Walker has moved the court to dismiss this appeal, so far as it concerns himself, on the ground that the decree touching himself is interlocutory, and not final.

(2) The appellants concede that the decree dismissing the original, amended, and supplemental bills of complaint as to the Eastern Illinois Company is correct, unless the original bill of complaint was a creditors' bill which created a lien on $500,000 of bonds of the Eastern Illinois Company, which it was about to issue to certain officers, agents, and attorneys of the Danville Company, and which it did issue before the filing of the amended and supplemental bills of complaint.

The original bill of complaint, after stating the parties plaintiff and defendant, and their respective citizenship, and that the complainants had severally recovered judgments against the Danville Company for certain amounts named, and had severally caused executions to be issued on their respective judgments, which executions had been severally returned nulla bona, alleges, in substance:

That the indebtedness merged into said several judgments was all incurred by the Danville Company and existed prior to, and has existed ever since, the year 1873, and that said judgments, since their rendition, have been and still are liens upon the property, or some portion thereof, of the said Danville Company. That the Danville Company was heretofore the owner of a line of railroad extending from Dalton, Cook county, Ill., southerly to Danville, in Vermillion county, a distance of about 108 miles, and a branch line from Bismarck, in said Vermillion county, southeasterly to the east line of the state of Illinois, a distance of 4.5 miles, with right of way, station and other grounds, grading, bridges, culverts, tracks, shops, tools, fixtures, station buildings, structures, fences, and supplies for the use and operation of said road, and terminal tracks, sidings, and switches along said road, and in and near the city of Chicago, and certain lots and leaseholds, rights, and contracts by it acquired for use in connection with said line of railroad, and engines, cars, and machinery and equipments pertaining to said line of railroad, and certain franchises to it belonging, in that regard, together with other property in the state of Illinois; and also a line of road connecting with said lines in the state of Illinois and the state of Indiana to a point near Covington, Ind., with certain franchises and other property connected therewith. That on or about March 10, 1869, the Danville Company executed a purported deed of trust conveying to William R. Fosdick and James D. Fish, defendants herein, as trustees, the road and property of said company in the state of Illinois, extending from its terminus in Chicago to a point on the state line of Indiana, and including all property between said terminal points which said party of the first part "now has or possesses, or may hereafter acquire," and purporting to be its entire property and assets in the state of Illinois, to secure a pretended issue of bonds of said railroad company, of even date with said trust deed, amounting to $2,500,000, payable April 1, 1909, with interest at the rate of 7 per cent. per annum, payable semiannually, as evidenced by certain coupons issued with and attached to said respective bonds. That said trust deed was not acknowledged and recorded as required by the laws of the state of Illinois, and was not a valid conveyance of said property for the purposes therein stated, the property thereby sought to be conveyed being largely personal property thereby left in the possession of the mortgagor, and said mortgage or trust deed not being acknowledged before a justice of the peace in the town where said property or any part thereof was situated, and said personal property was sought to be conveyed contrary to the laws of the state of Illinois. That, as your orators are informed, said bonds to the amount of $2,500,000 were issued, and a large part of them was sold or hypothecated soon thereafter and passed into the possession of holders thereof,

and afterwards, by transfer, or under the conditions of certain agreements hereinafter mentioned, into the possession and ownership, or under the control, of certain of the defendants hereto, as representatives of the owners thereof, as hereinafter stated. That on March 4, 1872, the Danville Company became consolidated into one corporation, by the same name, with the Rossville & Indiana Railroad Company, and on March 9, 1872, a further consolidation was effected, by the same name, with the Western Railroad Company, an Indiana corporation, whereby the consolidated company was empowered to build and operate a railroad from the state line, in Warren county, to Brazil, in Indiana; and on March 12, 1872, the consolidated company, for the alleged purpose of raising means wherewith to construct its Indiana Division, issued its bonds to the amount of $1,500,000, bearing interest at the rate of 7 per cent. per annum, payable 40 years after date, to secure which, on the same day, was executed a pretended mortgage to said Fosdick and Fish, defendants herein, covering its Indiana Division and a branch road extending from a point three miles south of Covington to the village of Newberg, being about 80 miles in all, and being all the property of said company in the state of Indiana; all the bonds secured by this mortgage were issued, and some part of them was sold or hypothecated soon thereafter. That said mortgage was not properly executed, acknowledged, or recorded, and was invalid, and said issue of bonds was never properly authorized by said company, and was for an amount largely in excess of the cost of the property conveyed by said trust deed. That the Danville Company, on April 24, 1872, executed another mortgage to Fosdick and Fish, purporting to convey the Indiana Division as security for the first issue of bonds on the Illinois Division, and purporting to convey the Illinois Division as security for the bonds originally issued on the Indiana Division; but whether or not said mortgage was ever acknowledged or recorded the complainants are not certainly advised, but are informed and believe that the said mortgage was not properly acknowledged and recorded in the state of Illinois, and in this state said mortgage was not valid, and was never properly authorized and executed by said company, and was wholly without consideration in Illinois, and was void under the laws of Illinois, for that it sought to create an indebtedness wholly in excess of the cost of said property conveyed, and for other reasons. That on or about December 16, 1872, said Danville Company executed a pretended deed of trust purporting to convey to James D. Fish and James W. Elwell, as trustees, all of its property in the states of Illinois and Indiana, to secure an issue of bonds to the amount of $1,000,000, payable, with interest semiannually at the rate of 7 per cent., on February 1, 1893, and all of said bonds, except about $45,000 thereof, were issued. That said mortgage was never properly acknowledged or recorded in the state of Illinois, and was never properly authorized or executed by said company, and was void and invalid under the laws of the state of Illinois, for that it sought to create an indebtedness of said company and make it a lien on all its property largely and wholly in excess of the cost of said property, and without any new consideration therefor moving to said company, and for other reasons. That a small part of said bonds were afterwards sold, and some part thereof hypothecated for small sums, and a part thereof was given to holders of first mortgage bonds of said company on account of coupons maturing for interest on said first mortgage bonds, but that said coupons were not thereby paid, were not canceled, and are still held and insisted upon by said holders as indebtedness, and liens upon said road under said first mortgage, as hereinafter set forth. That the entire amount of said bonds ever actually sold was not to exceed $170,000 thereof, and that all the remainder were merely used to duplicate, and in many instances to triplicate or quadruple, the indebtedness of said company, and cannot lawfully be enforced as valid liens on said property as against or prior to the claims and liens of complainants. That some time in 1875 a pretended chattel mortgage conveying certain personal rolling stock and personal property of said company was attempted to be made to defendant R. Biddle Roberts, and a further issue of bonds to the amount of $800,000 was sought to be saddled upon said property as a further lien thereon, and some part of said bonds were hypothecated or pledged in like manner as in the case of the second mortgage bonds, but that said chattel

mortgage and bonds were wholly void, unauthorized, contrary to law, without consideration, and no part thereof has ever passed into the hands or possession of actual bona fide holders or purchasers, and all holders thereof had full notice of their void and fraudulent character.

That on or about February 27, 1875, Fosdick and Fish filed an original bill in the circuit court of the United States for the Northern district of Illinois, as such trustees under such mortgages or trust deeds wherein they were made trustees, praying, among other things, for a decree of foreclosure and sale of the property conveyed by said trust deed of March 10, 1869, in consequence of certain alleged defaults in the conditions of said trust deed, and that on March 10, 1875, the Danville Company was served with process issued upon the filing of said bill. That on May 17, 1875, Elwell, acting as trustee in said purported mortgage of December 16, 1872, appeared in said cause and filed a cross bill therein, setting out the terms of said mortgage, the issuing of the bonds secured thereby, and craving certain relief therein prayed. That on May 20, 1875, by the order and decree of the circuit court of the United States for the Northern district of Illinois, one Adna Anderson was appointed receiver in said cause, to take possession of the money and assets, real and personal, roadbed, road, iron, ties, lands, rights of way, mines, rolling stock, leases, franchises, and all other rights and property of whatever nature and kind of the Danville Company, wherever the same might be found within the state of Illinois, with power to manage and control and exercise all the franchises, and control the property of the said railroad company, within said state, and to have full power and authority to inquire for, receive, and take possession of all said property, debts, equitable interests, things in action, and other effects, and to manage and control all said property and affairs of said company, until the further order of said court in the premises, upon giving bond as thereto required. That on May 31, 1875, said receiver having given bond and qualified as required, it was further ordered and decreed that said receiver be and was invested with all the duties in said decree mentioned, and was authorized and directed immediately to enter upon the discharge of his duties as aforesaid, and to take possession of all and singular the property, rights, and franchises in said decree mentioned, which said receiver immediately proceeded to do, and, acting in that capacity as an officer of the court, he did take possession of all said property, and he, or a successor duly appointed and qualified, with like rights and powers, has ever since continued and is still acting in said capacity under said order and decree, which are still in full force, and has never been discharged, and is still in possession of all the property of said Danville Company, except as hereinafter set forth. That by such proceedings said court obtained and assumed, and still retains by said receiver, the possession and control of all the property and assets of said railroad company within the state of Illinois, save as hereinafter specified, and that by reason thereof complainants have been and still are delayed, restrained, and enjoined from selling or in any manner realizing upon the executions issued on their said judgments, or otherwise, the amounts of their respective judgments, or any part thereof, and that the only property of the Danville Company, within the state of Illinois or elsewhere, so far as complainants have been able to discover, from which they could realize payment of any portion of their respective judgments, is now in the possession and under the control of the court by its receiver, except as hereinafter specified; and complainants know of no other means whereby they can obtain payment of any portion of their said judgments than as hereinafter set forth, and by obtaining relief under this bill as hereinafter prayed. That on July 12, 1875, the Danville Company filed its answer in said cause to said original bill, denying the defaults in said bill alleged. That on September 14, 1875, said Fosdick and Fish filed in said cause an amended bill against the Danville Company and James W. Elwell and R. Biddle Roberts, craving certain relief therein prayed. That on October 23, 1875, the Danville Company filed a demurrer to so much of the amended bill of Fosdick and Fish as charged that it would be impossible for said company to fulfill the conditions of certain funding agreements in said amended bill mentioned, and that the holders of certain funding certificates mentioned had the right to rescind said agreements, being the agreements under which said

holders became possessed of said second mortgage bonds hereinafter stated, and to other portions of said amended bill, and on the same day filed its answer to the remainder of said amended bill. That on January 6, 1876, an intervening petition was filed by leave of court in said cause by certain persons who are named as defendants thereto, as holders and owners or representatives and agents of the holders and owners of said first mortgage and other of said bonds, adopting fully the averments and prayers of said original and amended bills of said Fosdick and Fish, and asking to be, and by the leave and order of said court making themselves, co-complainants with said Fosdick and Fish, and parties to said suit, and, in fact, assuming and taking the real control and conduct of said cause, and thereafter continuing and maintaining such direction and control, as the real complainants, and soon after, on or about February 1, 1876, an agreement in writing was entered into between the holders of said Illinois Division first mortgage bonds, whereby said interveners or some of them were appointed the agents and attorneys in fact of all said Illinois Division first mortgage bondholders to act for them in said suit; and that, in accordance with the provisions of said agreement, said interveners, and more particularly Frederick W. Huidekoper, Thomas W. Shannon, and John M. Denison, continued to act as the representatives and attorneys in fact of said Illinois Division bondholders throughout the entire progress of said suit, and, acting in that capacity, in fact controlled said litigation on the part of the complainants and the Illinois Division first mortgage bondholders; and, acting under and in accordance with the provisions of said agreement, they afterwards purchased the property of said Danville Company in the state of Illinois, at the sale thereof hereinafter set forth, and did other acts after said sale in regard to said property hereinafter stated. That complainants are unable to state the precise terms of said agreement, or the subsequent modifications thereof, for reasons set forth. That such proceedings were had in said cause that on December 5, 1876, what purported to be a decree of said court was entered in said cause, requiring said Danville Company, within 20 days, to pay the said Fosdick and Fish, as trustees under said trust deed of March 10, 1869, the full amount of said bonds thereby secured, and certain sums of interest in said decree recited, and, in default thereof, that all of said railroad property in said trust deed described, and all the right, title, interest, and equity of redemption of the Danville Company therein, be sold as an entirety by Henry W. Bishop, one of the masters in chancery of said court, in the manner provided in said decree; but complainants show that said decree was not valid, said court not having proper jurisdiction to enter the same under the pleadings and proofs in said cause, and it was void, and has since the entry thereof been reversed and annulled by the supreme court upon an appeal prosecuted therefrom. That thereafter, on February 7, 1877, said Bishop, acting under said void decree, made a pretended sale of the property therein specified to Huidekoper, Shannon, and Denison, as trustees and representatives of the Illinois Division bondholders of the Danville Company, who, acting in that capacity and no other, bid in said property at said master's sale for and on behalf of said bondholders, and on April 12, 1877, said master executed and delivered to said Huidekoper, Shannon, and Denison what purported to be a conveyance of said entire property for and in consideration of the bid so made by them at said sale, the greater portion of said bid being paid by a partial surrender of bonds, and that thereafter the receiver in said cause, acting under the order of the court, delivered to said purchasers the possession of said property; but complainants charge that said sale and conveyance were wholly dependent upon said void and invalid decree, and were utterly null and void, and passed no title to said property to said supposed purchasers, and that the delivery of the possession of said property to said purchasers placed them in possession of said property as mortgagees in possession under an unforeclosed mortgage and trust deed, with full notice that said decree, sale, and conveyance were void and of no effect, and that said order of the court directing the delivery of such possession was of no force or effect, being entirely dependent upon said void decree, and has been so declared by the opinion and mandate of the supreme court; and that the only effect of said supposed sale and delivery was to place said Huidekoper, Shannon, and Denison in possession of

said property, as the representatives of the holders of said Illinois Division bonds, as mortgagees in possession under an unforeclosed mortgage or trust deed.

That thereafter Huidekoper, Shannon, and Denison, being in the possession of said property, together with George Gill, Chandler Robbins, and William Hickok, caused to be recorded in the office of the recorder of deeds of Cook county, Ill., a pretended certificate of articles of organization of the Chicago & Nashville Railroad Company, purporting to be a railroad corporation organized under the laws of Illinois, with a capital stock of $500,000; and afterwards, on or about August 28, 1877, Huidekoper, Shannon, and Denison executed to said pretended corporation a quitclaim deed of said property for and in consideration of the issuance and delivery to them of said $500,000 of capital stock, being the entire capital stock of said pretended corporation, and that all of said stock was issued to and thereafter held by said Huidekoper, Shannon, and Denison as trustees for and representatives of the Illinois Division bondholders of the Danville Company, and not otherwise. That said corporation was not properly organized under the laws of Illinois, and was not and never became a valid and legal corporation, and said pretended conveyance to it was utterly void, and of no force or effect in law, and passed no title to said Chicago & Nashville Railroad Company to said property, and that said pretended incorporation and conveyance thereto was solely for the purpose of clouding the title to said property. That on or about September 8, 1877, Huidekoper, Shannon, and Denison, as holders of all the capital stock of said Chicago & Nashville Railroad Company, and acting as trustees and representatives and attorneys in fact of the Illinois Division bondholders of the Danville Company, caused to be recorded in the office of the recorder of deeds of Cook County, Ill., a pretended certificate of articles of consolidation between the Chicago & Nashville Railroad Company and the State Line & Covington Railroad Company, a pretended railroad corporation purporting to have been organized under the laws of Indiana, thereby pretending to form a consolidated corporation called the Chicago & Eastern Illinois Railroad Company, and by said articles of consolidation to vest in it the title and possession of all of said property of the Danville Company, the capital stock of said pretended consolidated corporation being fixed at the sum of $500,000, divided into 5,000 shares of $100 each. That in said articles of consolidation, as recorded, was the following:

"And all and singular the debts, liabilities, and contracts of every kind of said two original companies shall become the debts, liabilities, and contracts of the consolidated corporation hereby created, which shall in all respects pay, discharge, and perform the same in all respects as either of said original corporations were bound by law to do." "It is further expressly agreed and understood, as one of the conditions of this consolidation, that the said corporation hereby created shall, with all convenient dispatch, in all things keep and faithfully perform the trusts of two certain written agreements, one between the Illinois Division bondholders of the Danville Company, dated December 1, 1876, and as modified, under which the said Illinois Division was purchased on February 7, 1877, by Huidekoper, Shannon, and Denison, and the second being an agreement in writing, dated July 13, 1877, between a committee of said Illinois Division bondholders and a committee of the Indiana Division bondholders; and to carry out such trusts it is agreed that the consolidated corporation hereby created shall with all convenient speed make an issue of bonds to the amount of $3,000,000, payable in currency, to bear interest at 6 per cent., and be indorsed with privilege and payment of the same secured by a first mortgage on all the railroad equipments, property, and franchises of said consolidated corporation, except the incomplete portion of railroad between Coal Creek and Brazil, Indiana, and will also make an issue of income bonds not to exceed in the aggregate the sum of $1,000,000 currency." "That $375,000 of the first mortgage bonds of said consolidated corporation shall be used to pay and satisfy the said Indiana Division bondholders represented by a committee executing the said agreement of July 13, 1877, who are to receive the said $375,000 of bonds as and for their full distributive share and interest in said consolidated property." "All the remainder of said first mortgage bonds and all of such issue

of income bonds shall be held, used, and transferred by said consolidated company solely for the use and behoof, and to be distributed in accordance with the trusts of said written agreement between said Illinois Division bondholders of the Danville Company, and the consolidated company are to assume the title and possession of said railroad and property charged with the trusts of said two agreements to be by it performed according to the true intent thereof."

That said Huidekoper, Shannon, and Denison, as holders of the entire capital stock of the Chicago & Nashville Railroad Company, and F. H. Story and D. R. Mangan, as holders of the entire capital stock of the State Line & Covington Railroad Company, assented to said consolidation. That all the capital stock of the Eastern Illinois Company, and all of its bonds which were ever issued, were issued and delivered to said Huidekoper, Shannon, and Denison as such trustees and representatives of the bondholders of said Danville Company. That Huidekoper, Shannon, and Denison thereby transferred to themselves, by their new name of the Eastern Illinois Company, or as the sole and only stockholders and bondholders thereof, the possession of all the property of the Danville Company, and the said Eastern Illinois Company has ever since continued in possession thereof; but complainants aver that said articles of consolidation were illegal, invalid, and void, and that said Eastern Illinois Company never was and is not now a valid, legal, and subsisting corporation, and has never in any wise complied with the requirements of the state of Illinois regarding organization and consolidation of railroad companies or corporations. That the said bonds and stock of said corporation were illegally issued, being for an amount largely in excess of the actual cost of said railroad property, and contrary to the laws of the state of Illinois, and that by said actions said Eastern Illinois Company succeeded to the rights and liabilities of said bondholders of the Danville Company, and acquired no greater rights than said bondholders or their representatives had in and to said property, viz. the right of mortgagees in possession under an unforeclosed mortgage or trust deed; and that all stockholders, bondholders, and purchasers of the bonds and stock of said Eastern Illinois Company had full notice thereof, from the record of said articles of consolidation, and from the contents of said contracts therein referred to, and from the record of said cause in the United States circuit court and supreme court, and with full notice that the sole and only title of said Eastern Illinois Company to said property of the Danville Company, if it had any title thereto whatsoever, was merely the title of a mortgagee in possession, without power to convey or incumber said property, or to pass any title thereto, save and except that of a mortgagee in possession. That ever since the possession of said property was delivered to said mortgagees by their representatives, which was on or about April 12, 1877, and during all the time they have been so in possession, first by their said trustees or attorneys in fact, Huidekoper, Shannon, and Denison, and later by said trustees under the name of the Chicago & Nashville Railroad Company, and thereafter until the present time under the name of the Eastern Illinois Company, said property has been producing a large income and earnings, the gross income thereof having been more than $9,000,000 during said time, and very largely in excess of all proper expenses and charges of operating and maintaining said property, for all of which earnings and income said mortgagees in possession are bound in law and equity to fully and justly account, and that if such accounting with said mortgagees in possession should be closely watched and fairly conducted the net earnings and income by said mortgagees received would, in a large measure, if not entirely, extinguish said first mortgage debt, and complainants have a right to a hearing and representation upon such accounting which fixes the amount of the indebtedness due said mortgagees, and as security for the payment of which they now hold possession of said property. That said property has all the time been, and still is, very valuable, being of the value of $4,000,000 and upwards. That said mortgagees in possession as aforesaid have never paid any consideration for said property, other than the sums paid by them for and on account of the bonds of the Danville Company, and a large part of said bonds were never sold, but were only pledged to the holders thereof for small sums in comparison with the

amount of the bonds so pledged, and have never been sold for the amount of such pledges or otherwise. That all operating expenses and costs of maintenance and improvements or betterments of said railroad property, while in the hands of said mortgagees in possession, have been paid out of the earnings and income received from said property.

That at the October term, 1881, of the supreme court, on appeal therefrom, said decree of December 5, 1876, was reversed and annulled for the reason that this court was without jurisdiction to enter the same, said bill having been filed without proper authority under the provisions of said trust deed, and said mortgage bonds not being due at the time of the entry of said decree. and thereafter, at the October term, 1882, of said supreme court, it was adjudged that all subsequent decrees and proceedings had and taken in carrying out the provisions of said decree of December 5, 1876, were vacated and annulled by the vacating of said prior decree of foreclosure and sale, and the said supposed sale to and purchase by Huidekoper, Shannon, and Denison were thereby rendered void and of no effect. That thereafter, on July 7. 1882, said complainants in said proceeding, Fosdick and Fish, filed therein their supplemental bill, wherein they set up substantially the foregoing proceedings, and that after the orders and decrees of the supreme court, viz. on June 27, 1882, they, as trustees under said trust deed of March 10, 1869, and the supplemental trust deed of April 24, 1872, in pursuance of notice and demand upon them to that effect by the said bondholders, or their representatives, had declared due all of said bonds secured by said trust deed of March 10, 1869, and praying for a decree in their favor declaring the trust deed of April 24, 1872, was a valid and subsisting lien on the Illinois Division property for about $1,400,000, and interest thereon from April 24, 1872. of the Indiana Division bonds, subject only to the prior lien of Fosdick and Fish. as complainants, under the trust deed of March 10, 1869, and for a foreclosure of all said property, being the entire property of the Danville Company in the state of Illinois. That on December 6, 1882, Fosdick and Fish filed in said cause their amendment to said supplemental bill, wherein they further set up certain allegations regarding the said purchase of said Huidekoper, Shannon, and Denison, and the connection therewith of the Eastern Illinois Company, and making them parties defendant to said amended supplemental bill; and, further, that in the meantime the receiver in said cause have charge of said property, and that an account of the gross earnings and operating expenses of said railroad company from April 18, 1877, be taken by the master and be reported to the court, and the net income thereof ascertained and taken into consideration in the ascertainment of the amount to be found by the decree to be due on said mortgage bonds, and for other relief; and also making Elwell, acting as trustee in said so-called second mortgage, and Roberts, as acting trustee in said chattel mortgage, and also as representative of a large amount of the Indiana Division mortgage bonds, defendants to said supplemental bill, and requiring them to answer the same. That thereafter said defendants in said cause filed their answers to said supplemental and amended supplemental bills, and replications were thereafter filed thereto. That at or about the time of the filing of said amended supplemental bill the Eastern Illinois Company, by leave of court. filed in said cause a cross bill setting up that it was a bona fide purchaser and owner of said property, and asking affirmative relief on said cross bill, and the confirmation of its title to such property, and denying the right of said complainants or said Danville Company or its creditors to any account of the income and expenses of said property after the delivery thereof by the receiver in said cause, under the order of said court, to Huidekoper, Shannon, and Denison, on April 12, 1877. That Fosdick and Fish and other defendants in said cross bill thereafter filed their answers thereto, and replications were filed to said answers. That thereafter an order was entered referring said cause to a master to take proofs and report the same to the court. That a large amount of proof was taken, and during the early taking of proofs close attention was given thereto by the Danville Company and its officers and agents, and proper efforts were made to have its rights protected. That said supplemental and amended supplemental bills were in legal effect an original proceeding to foreclose said trust deed, the former

proceedings to that effect having been premature and invalid. That the judgments of complainants were and are liens on the property, or some part thereof, sought to be foreclosed, and became and were, some of them, such liens, prior to the filing of said supplemental and amended supplemental bills to foreclose, and some of them prior to the pretended sale of said property on February 7, 1877, but all subsequent to the execution of the trust deed on March 10, 1869. That under the laws of Illinois complainants had and have the right to redeem the said property from said mortgages, or to pay the amount of said mortgages or any decree found in said cause before a foreclosure or sale of said property thereunder, and had a right under the law to be heard before the entry of any decree therein determining the amount due under said mortgages, or disposing of said property, and that they were proper parties defendant to said supplemental and amended supplemental bills to foreclose. That they were not made parties to any of said proceedings, and had not until recently appeared therein, for the reason that it was the duty of the Danville Company to defend its property and protect and save the same from any unjust claim and demand of Fosdick and Fish, or said bondholders, or their creditors or mortgagees, and that said railroad company had been and was until very recently making a very vigorous and bona fide defense of its rights, and protecting the same and its property in said proceeding. That recently the Danville Company, combining and confederating with the Eastern Illinois Company and other of said defendants, neglects and refuses to pay the amount due the complainants, and to apply for that purpose any property or assets to them belonging, and has been for some time past negotiating and arranging, and has arranged and agreed upon, and is now aiding and carrying out, a secret and fraudulent scheme to allow said Eastern Illinois Company to keep and retain said property in its possession permanently and absolutely, and through the medium of a decree to be procured in said cause by consent or agreement, or in some way by default or connivance, of said Danville Company, its officers, attorneys, or agents, and which decree shall be a final adjudication upon all said matters in controversy in said suit, and thereby to waive and annul all its rights and equities in and to said property. That complainants did not learn of said fraudulent and improper conduct on the part of the Danville Company until very recently, and immediately upon learning the same, on or about June 4, 1884, they prepared their intervening petition, and asked to be allowed to intervene and become a party to said cause, and to assert and protect their rights in the premises, and made application to the court for leave to file the same, which was denied. That thereafter complainants prepared and presented their petition asking to be made defendants to said supplemental and amended supplemental bills, which was denied.

That, as complainants are informed and believe, the Danville Company and the Eastern Illinois Company and other defendants therein recently, for the purpose of carrying out the fraudulent schemes by them so made, caused further testimony to be taken, at which taking of further testimony no real contest was made on behalf of the Danville Company, and no effort was made on its part to present such testimony as would give the court a fair showing of its rights in the premises, and a large amount of testimony was allowed to be introduced by the Eastern Illinois Company and other parties in like interest which properly should have been excluded, but was allowed to be introduced without objection or contest, and really by collusion, and that thereby the true facts in regard to the matters covered by said reference were not properly shown. That thereafter, and very recently, the master, at the request of said parties, and in compliance with the order of reference, made his report and returned the testimony and evidence introduced on the reference, and thereafter said cause was submitted to the court and the entry of a final decree without argument or presentation of the facts therein, other than the submission to said court of the unfair and incomplete testimony taken before the master, and certain printed briefs which had been before that time used before said court upon the hearing of certain motions in said cause, and that said cause was not fairly or properly presented to said court. That such neglect and improper conduct in that regard of the Danville Company and its officers, attorneys, and agents has been in consequence of said

fraudulent agreement with the Eastern Illinois Company and other defendants to this bill, whereby the Eastern Illinois Company has agreed to pay the said officers, attorneys, and agents of the Danville Company, and to certain of its stockholders and others, a large amount of money, or in bonds of the Eastern Illinois Company to be issued for that purpose. That said Eastern Illinois Company has caused to be prepared, and is about to issue, its bonds to the amount of $500,000, which it proposes and has agreed to distribute among the officers, agents, attorneys, and stockholders of the Danville Company in consideration of the abandonment of all actual contest in said cause. That about $100,000 of said bonds, or the proceeds thereof, are to be given to or used in satisfying the claims and demands of certain holders of the second mortgage or chattel mortgage bonds of the Danville Company, who had previously been assisting the officers, attorneys, and agents of said company in the prosecution of its defense in said cause. That the remaining $400,000 of said bonds, or proceeds thereof, are to be paid, or the proceeds distributed among, the attorneys, officers, agents, and stockholders of the Danville Company. The exact distributive shares, or the persons to whom the same are to be distributed, or the manner of such distribution, complainants are unable to state, but are informed and believe that certain persons named, or some of them, are to receive some portion of them. That the judgments of complainants are a lien upon said property, or the proceeds thereof, prior to the rights or liens of said officers or stockholders of said railroad company, or any other of said defendants, and that before any distribution of said effects should be made to said parties, or to any of them, complainants' judgments should be paid or satisfied out of said funds, or otherwise. That on or about June 30, 1884, said court entered a final decree in pursuance of the submission to the court theretofore made, finding that the equities in the cause were against all parties except the Eastern Illinois Company, in whose favor the equities were found on its cross bill against all the defendants thereto, and dismissing the cross bill of Elwell, acting trustee under said second mortgage, and of Roberts, trustee under said chattel mortgage, with costs, and finding to be due complainants, Fosdick and Fish, trustees under the first mortgage, the sum of $4,795,416.66, for the use of the holders of the Illinois Division first mortgage bonds and coupons of said Danville Company, which was found to be a first lien on all of said property of the company in Illinois, and also finding to be due Fosdick and Fish, as trustees under the Indiana Division mortgage, the sum of $2,980,296.19, being for a supposed balance of a decree and interest of the United States circuit court for the district of Indiana entered for the unpaid portion of the Indiana Division bonds of the Danville Company, which was decreed to be a second lien upon the Illinois Division of the Danville Company, and also dismissing the supplemental and amended supplemental bills of Fosdick and Fish as to the Eastern Illinois Company, upon whose cross bill it was decreed that by virtue of the original deed to Huidekoper, Shannon, and Denison, and the confirmation thereof, and by the subsequent conveyance by them to the Chicago & Nashville Railroad Company, and the consolidation of that railroad company and the State Line & Covington Railroad Company, the Eastern Illinois Company acquired a perfect and indefeasible title to the Illinois Division property of the Danville Company, free and clear of all title or claim of the Danville Company, or any of its creditors or bondholders. That in the ascertainment of the amounts found due by said decree, and other matters thereupon adjudicated, complainants have had no hearing, and have been allowed no opportunity to present or insist upon their rights in the premises. That said Eastern Illinois Company and said other defendants to this bill are now proceeding, or about to proceed without delay, to a distribution of said money or bonds according to said fraudulent agreement heretofore made, and that unless complainants are allowed relief in the premises, as herein prayed, their judgments will be utterly valueless, and will be hereafter utterly uncollectible.

Prayer, that all of the defendants set forth and discover the nature and situation, amount, and value of all the property, interest, and effects of the Danville Company including all things in action, with all the particulars relating thereto, and that they make answer and state whether, at the time

of filing this bill, they or any of them had in their hands or possession, or under their control, any property or assets of the Danville Company, or held in trust for it, or in which it had some beneficial interest, and, if so, that they may state and set forth a full, true, and particular account thereof, and the nature and value of its interest therein; and that said defendants may state and set forth, each for themselves, the particulars of said agreement or arrangement for the distribution of said $500,000, or whatever sum was to be paid, in money or in bonds of the Eastern Illinois Company, to whom such bonds have been or are to be delivered, or to whom the proceeds thereof are to be paid or distributed, and what has been done with the same, or with the proceeds and avails thereof; and that the Danville Company, or some other of the defendants, may be decreed to pay to complainants the amount due to them respectively on their respective judgments, with costs and charges, and may be decreed for that purpose to apply any money or property, real or personal, in law or in equity, debts, choses in action, or equitable interests belonging to the Danville Company, or held in trust for it, or in which it or its officers or stockholders or agents are in any way or manner beneficially interested, and that the defendants, and each of them, may be enjoined from selling, assigning, transferring, delivering, negotiating, discharging, concealing, collecting, incumbering, or in any manner disposing of or intermeddling with any debts or demands due to the Danville Company, or its officers, agents, attorneys, or stockholders, or any property belonging to the company, whether in its possession or held by some other of said defendants or other persons in trust for it, or to its use and benefit, and from paying to it, or any of its agents, officers, stockholders, or any other person, any of said bonds, or proceeds thereof, issued or about to be issued by the Eastern Illinois Company, or any other property, real or personal, things in action, or chattels real held by it or by any other person for it, or in which it has any interest whatever; and that said property of the Danville Company, as heretofore specified, now in the possession or under the control of the Eastern Illinois Company and said defendants, as mortgagees in possession, may be decreed to be the property of the Danville Company, subject only to the rights of said other defendants to hold possession thereof, as mortgagees in possession under an unforeclosed mortgage or trust deed, until their just and equitable demands for which said property is holden are paid, and that an accounting may be had of what amount is due to said mortgagees for principal and interest upon the Danville Company bonds owned by or pledged to them, and which were valid and bona fide debts of said company, and liens upon its property, and what amounts the defendants, or any of them, have received, or are properly chargeable with, from the earnings and income of said property, and what credits they are entitled to for operating expenses and maintenance of said property, and what amount, if any, they are entitled to upon such accounting; and that upon payment thereof by complainants, all of which sums they are ready to pay, and now here offer to pay, they may be allowed to redeem said property, and may be subrogated to the rights of said mortgagees as against the Danville Company, its privies and creditors; and for such further, other, or different relief as the nature of complainants' case shall require, and as shall be agreeable to equity and good conscience.

C. M. Osborn, S. A. Lynde, C. B. McCoy, and C. E. Pope, for appellants.

Edwin Walker, W. H. Lyford, J. S. Sleeper, and Ball, Wood & Oakley, for appellees.

Before WOODS, Circuit Judge, and BAKER and SEAMAN, District Judges.

After making the foregoing statement, the opinion of the court was delivered by BAKER, District Judge:

This court, by the organic act creating it, is vested with power to exercise appellate jurisdiction to review by appeal or by writ of

error final decisions of the district courts and of the existing circuit courts in all cases other than those provided for in the fifth section of the organic act, unless otherwise provided for by law.    26 Stat. 828, § 6.    The limitation upon the appellate jurisdiction of this court provided for in section 5 has relation to certain classes of causes wherein the right of appeal from final decisions of the district and circuit courts to the supreme court is preserved.    In addition to the exercise of appellate jurisdiction to review final decisions of the district and circuit courts, this court is vested with authority to review, by appeal, certain interlocutory orders or decrees made during the progress of a cause.    Id. § 7.    This section provides:

"That where, upon a hearing in equity in a district court, or in an existing circuit court, an injunction shall be granted or continued by an interlocutory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the circuit court of appeals, an appeal may be taken from such interlocutory order or decree granting or continuing such injunction to the circuit court of appeals: provided, that the appeal must be taken within thirty days from the entry of such order or decree."

It is thus made apparent that the determination of the motion to dismiss the appeal as to the appellee Walker hinges on the question whether or not the decision of the court below against him was final or interlocutory.    A final decree or judgment is one which puts an end to the controversy between the parties litigant.    If the decision or judgment leaves some matter involved in the controversy open for future hearing and determination before the ultimate rights of the parties are conclusively adjudicated, it is interlocutory, and not final.    The authorities are uniform to the effect that a decree or judgment, to be final for the purposes of an appeal or writ of error, must leave the case in such a condition that if there be an affirmance here the court below will have nothing to do but to execute the decree or judgment it has already entered.    Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15; Grant v. Insurance Co., 106 U. S. 429, 431, 1 Sup. Ct. 414; St. Louis, I. M. & S. R. Co. v. Southern Exp. Co., 108 U. S. 24, 28, 2 Sup. Ct. 6; Ex parte Norton, 108 U. S. 237, 242, 2 Sup. Ct. 490; Mower v. Fletcher, 114 U. S. 127, 5 Sup. Ct. 799; Dainese v. Kendall, 119 U. S. 53, 54, 7 Sup. Ct. 65. Tested by the principle above stated, the decree against the appellee Walker is not final, and the motion to dismiss the appeal must be sustained.    The decree fixes the liability of the appellee Walker to account for 127 bonds, of the par value of $1,000 each, together with interest on the coupons thereon; but it is expressly decreed that he is entitled to credit thereon for such sum or sums as may be rightfully due him.    The sum or sums rightfully due him, and to which he is adjudged to be entitled to credit, is left wholly undetermined by the decree of the court, so that it is impossible, without a further hearing, to determine the extent of his liability, if any.    Until such sum or sums as may be rightfully due him shall be ascertained and credited upon the fund with which he is charged, the extent of his liability remains undetermined. It is found by the court that in a suit, in which the appellee Walker

is a party, pending in a state court touching the bonds here in controversy, an accounting has been had, and a report thereof has been made to such court, but has not been acted upon; and it is thereupon ordered that the execution of the decree fixing his liability be stayed until the final determination of the suit in the state court, and until the further order of the court. And the court below expressly reserved to itself the right to allow such further proceedings in the cause between the appellants and the appellee Walker as may become necessary or proper by reason of the final determination of the case in the state court. These facts conclusively demonstrate that there has been no final decree rendered against the appellee Walker, and that the final settlement and determination of the question of his liability, if any, are reserved for further hearing after final judgment in the state court.

The appellants contend that the court erred in dismissing for want of equity the original, amended, and supplemental bills against the Eastern Illinois Company. Counsel for appellants, in their elaborate briefs, have pointed out only one alleged error in the decree. They earnestly contend that the court erred because it did not charge the Eastern Illinois Company with liability to account for and pay over to the appellants the value of the 500 bonds, of $1,000 each, issued by it to certain agents, attorneys, officers, and stockholders of the Danville Company after the filing of the original bill in this cause. The court below decided that these bonds, or their proceeds, belonged to the Danville Company, and that the parties to whom they were issued held them in trust to the use of that company, and subject to the paramount rights of the appellants as judgment creditors. It is claimed by appellants that their original bill was a creditors' bill, and that from the time of its filing and the service of process it operated as an equitable attachment of these bonds in the hands of the Eastern Illinois Company, and that, having issued them to other parties while thus impounded, it ought to have been decreed to account to the appellants for their full value, or for so much, at least, as would satisfy their respective judgments. Neither the amended bill nor the supplemental bill is material to the determination of this question. Both of these bills were filed after the Eastern Illinois Company had issued these bonds, and therefore, unless the original bill operated as an equitable attachment of them while in the hands of that company, the appellants acquired no interest in or lien upon them or their proceeds, and consequently have no right to complain of their transfer to other parties. In view of the fact that the court decreed that these bonds, or their proceeds, belonged to the Danville Company, it is apparent that it dismissed the original, amended, and supplemental bills on the ground that the original bill created no lien upon the bonds in controversy in the hands of the Eastern Illinois Company, and that no lien upon them could be acquired by the amended or supplemental bills, because when they were filed that company had ceased to own or control them. It seems to us the decision is right upon either of two grounds. A careful consideration satisfies us that, in its true scope and purpose, the original

bill is one to be let in to redeem the property of the Danville Company in the hands of the Eastern Illinois Company as a mortgagee in possession under an unforeclosed mortgage. The allegations in the bill touching the bonds in controversy, and the prayer for an injunction to restrain the Eastern Illinois Company from issuing them, are peculiarly appropriate in a bill to redeem, because if such bonds were issued, and came into the hands of bona fide holders for value, they would create an additional incumbrance on the property sought to be redeemed. It is true that there is a prayer for the discovery of assets, and for an injunction to restrain their transfer, and a general prayer that the appellants' claims be decreed to be paid out of any assets and property of the Danville Company. But the specific relief asked for is that they be permitted to redeem all the property of whatever sort belonging to the Danville Company in the possession of the Eastern Illinois Company as a mortgagee in possession under an unforeclosed mortgage. The bill of complaint is devoted almost exclusively to setting forth facts entitling the appellants to redeem the entire property of the Danville Company from the Eastern Illinois Company, to the end that it may be subjected to the satisfaction of their judgments. The allegations touching the bonds in controversy occupy but an inconsiderable part of the bill of complaint. It seems evident that it was framed on the theory that the mortgages or trust deeds mentioned in the bill were invalid, and that the proceedings resulting in the foreclosure and sale of the property of the Danville Company did not divest its title, and that its property in the hands of the Eastern Illinois Company was held by it as a mortgagee in possession under an unforeclosed mortgage. The claim of a right to redeem is inconsistent with the claim to recover the bonds in controversy or their proceeds. The first claim proceeds upon the theory that the Eastern Illinois Company acquired no title under the proceedings resulting in a foreclosure and sale of the property of the Danville Company, while the other proceeds upon the theory that a valid title was acquired thereby, authorizing the former company to issue bonds secured by a valid mortgage of the property. The one theory affirms, and the other disaffirms, the title of the Eastern Illinois Company. The appellants cannot succeed in the same case on such antagonistic theories. If they are entitled to a decree admitting them to redeem upon the theory that the Eastern Illinois Company has acquired no title to the property of the Danville Company, and that its only right is that of a mortgagee in possession under an unforeclosed mortgage, they cannot claim the right to have the bonds in controversy or their proceeds applied to the satisfaction of their judgments. Besides, treated as a bill to reach and appropriate the bonds in controversy to the satisfaction of their judgments, the greater part of its allegations would become irrelevant, immaterial, and surplusage, and, in fact, inconsistent. That construction ought to be given to the bill which appears to best harmonize with its apparent scope and purpose, and which will not lay it open to the charge of stating antagonistic and conflicting grounds of relief. And it seems to us that the only theory upon

which the allegations of the bill can be substantially harmonized is to treat it as a bill to redeem, and that the averments touching the bonds in controversy were incorporated in it to procure an injunction, and thus prevent their issue, thus preserving the status of the property pending the litigation. The bill unquestionably states in great detail a cause of action for redemption, and in clear and unambiguous terms it prays that the property of the Danville Company now in possession of the Eastern Illinois Company may be decreed to be the property of the former company, subject to the right of the latter company to hold possession of it as a mortgagee in possession under an unforeclosed mortgage; that an accounting may be had of the amount due to the latter company, which the appellants offer to pay; and that upon payment they be allowed to redeem said property and be subrogated to the rights of the mortgagees. If the bill is to be treated as a creditors' bill, and as stating a good cause of action to reach and appropriate the bonds in controversy, then we have in the same bill—First, a cause of action to redeem and take from the Eastern Illinois Company all the property obtained by it from the Danville Company; and, second, a cause of action to acquire and appropriate bonds issued by the Eastern Illinois Company to secure and confirm its title to the property so sought to be taken from it: Thus construed, the bill states two inconsistent causes of action; and the right to recover upon one theory is destructive of the right to recover upon the other. Such a bill cannot be maintained. It would be multifarious and self-contradictory.

"By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." Story, Eq. Pl. § 271.

The objection of multifariousness ought ordinarily to be taken by demurrer, but the court may, however, take the objection at the hearing, sua sponte; for the court is not bound to allow a bill of such a nature, although the party may not take the objection in season. Greenwood v. Churchill, 1 Mylne & K. 559; Story, Eq. Pl., supra. The bill might, therefore, have been properly dismissed at the hearing by the court sua sponte, for multifariousness.

It is urged by counsel for appellants that a bill is not multifarious, and may well be maintained, where, upon a given case, there is a prayer for consistent alternative relief. The rule is undoubtedly well settled that upon a given case there may be prayers for consistent alternative relief; but we do not understand that alternative and inconsistent cases may be stated in the bill, coupled with prayers for alternative and inconsistent relief. If the appellants' case was solely that the Eastern Illinois Company has no title to the property of the Danville Company, they might pray for various forms of alternative relief consistent with that case; but they cannot in the same bill make a case that it has no title, and also a case that it has a title, and then ask for inconsistent relief according to the different cases thus made. Such course of

procedure we do not understand is warranted by the doctrine of alternative relief. Such are alternative cases, and not cases of alternative relief. They are inconsistent, for a decree of one of these forms of relief would proceed upon a theory fatal to the other form of relief.

In the case of Shields v. Barrow, 17 How. 130, the original bill prayed that a certain agreement, made by way of compromise, should be set aside as having been fraudulently and improperly procured. Afterwards, the bill was amended by adding a prayer that if the court should be of the opinion that the agreement was valid, and ought not to be set aside, it would decree its specific performance. The court said:

"The court allowed the above amendment. So that the bill thereafter presented, not only two aspects, but two diametrically opposite prayers for relief, resting upon necessarily inconsistent cases; the one being that the court would declare the contract rescinded for imposition and other causes, and the other that the court would declare it so free from all exceptions as to be entitled to its aid by a decree for specific performance. Whether this amendment be considered as leaving the bill in this condition, or as amounting to an abandonment of the original bill for a rescission of the contract and the substitution of a new bill for a specific performance, it was equally objectionable. A bill may be originally framed with a double aspect, or may be so amended as to be of that character. But the alternative case stated must be the foundation for precisely the same relief, and it would produce inextricable confusion if the plaintiff were allowed to do what is attempted here. Story, Eq. Pl. 212, 213; Welf. Eq. Pl. 88; Edwards v. Edwards, Jac. 335. Nor is a complainant at liberty to abandon the entire case made by his bill, and make a new and different case by way of amendment. We apprehend that the true rule on this subject is laid down by the vice chancellor in Verplanck v. Insurance Co., 1 Edw. Ch. 46."

In the case before us the alternative cases stated cannot be the foundation for precisely the same relief, because, as we have already seen, a decree to be let in to redeem is not only inconsistent with, but absolutely destructive of, the right to a decree awarding the bonds in controversy to the appellants.

The case of Williams v. Jackson, 107 U. S. 478, 2 Sup. Ct. 814, was a suit in the supreme court of the District of Columbia by the holder of a debt secured by a deed of trust, the main purpose of which was to set aside a release negligently executed by the trustee to the grantor, and to satisfy the plaintiff's debt out of the land. The judge who heard the case refused to set aside the release, and adjudged that Stickney, as trustee, had fraudulently and negligently executed the same, and decreed that he should personally pay the debt. The court at general term reversed that part of the decree which declined to set aside the release, and also that part which adjudged that the plaintiffs recover against Stickney the amount of their debt. On appeal from the judgment of the general term, the court said:

"But that decree, so far as it refuses relief against Stickney personally, is right. The main purpose of the bill is to set aside the deed of release, and to satisfy the plaintiffs' debt out of the land. The attempt to charge Stickney with the amount of that debt, by reason of his negligence in executing the release, is wholly inconsistent with this. The one treats the release as void; the other assumes that it is valid. In the one view, Stickney is made a party in his capacity of trustee only; in the other, it is sought to charge him per-

sonally. The joinder of claims so distinct in character and in relief is unprecedented and inconvenient. Shields v. Barrow, 17 How. 130, 144; Walker v. Powers, 104 U. S. 245."

The case of Micou v. Ashurst, 55 Ala. 612, contains an equally clear and explicit discussion of this doctrine. The court say:

"But we concur with the chancellor that the bill is not filed for redemption, nor could a decree be founded on it that the complainant be let in to redeem. The averments of the bill are adapted only to a decree for the cancellation of the mortgage, because the debt is founded on an illegal consideration. As a general rule, a bill may be framed in a double aspect, or in the alternative, when either of the aspects or alternatives entitles the complainant to the same relief. But we do not understand that when a bill is filed for a distinct purpose, which wholly fails, whether on the facts stated, or on the proof, that it can be converted into a bill for another purpose. Nor do we understand that a bill may aver either one or the other of two alternatives is true when they are repugnant to and inconsistent with each other, and, if the one is true, entitling the party to relief wholly distinct from and repugnant to that which would be granted if the other was true. Now, if the consideration of the mortgage debt was illegal, violative of positive law, and offensive to public policy, a court of equity would not entertain a bill for redemption, nor foreclosure. The cancellation of the mortgage, as a cloud on the title of the mortgagor, would be, perhaps, the only ground on which the court would intervene. Averring the illegality of the debt, and the consequent invalidity of the mortgage, the appellant cannot then aver that he may be mistaken in this, and affirm their validity, and claim to redeem, especially when there is no averment of ignorance of the facts and of a necessity of a discovery. Suppose a bill of this character should be confessed by the defendant, what relief would the court grant? Which of the repugnant and inconsistent statements would be adopted? The averments of the bill not authorizing the specific relief prayed, —the cancellation of the mortgage, and of the evidences of the mortgage debt, which was its primary purpose, and the specific relief prayed,—it should have been dismissed. Cresy v. Bevan, 13 Sim. 354; Shields v. Barrow, 17 How. 130."

See, also, Sneed v. McCoull, 12 How. 407; Allen v. Spring, 22 Beav. 615; Maynard v. Green, 30 Fed. 643; St. Louis, etc., R. Co. v. Terre Haute, etc., R. Co., 33 Fed. 440, 448; Electric Accumulator Co. v. Brush Electric Co., 44 Fed. 602, 607; Rollet v. Heiman, 120 Ind. 511, 22 N. E. 666.

This last case was a creditors' bill to set aside a conveyance and to reach assets. Speaking of the rule of construction applicable to such a bill, the court, by Mr. Chief Justice Elliott, say: "A pleading, as we have often held, is to be judged from its general scope and tenor, and so this complaint must be judged." In the case before us, as in the case last cited, we are disposed to construe the bill as one for redemption, rather than to construe it as a bill stating two inconsistent alternative cases. But whether construed in the one way or in the other, it is equally objectionable, and the court committed no error in dismissing it.

The motion of the appellee Walker to dismiss the appeal, so far as it concerns himself, is sustained; and the decree dismissing the original, amended, and supplemental bills against the Chicago & Eastern Illinois Railroad Company is affirmed,—both at the costs of the appellants.