## WEST v. SMITH.

1. Where an action has been removed from a State court to the Circuit Court, the latter may, in accordance with the State practice, grant the plaintiff leave to amend his declaration by inserting new counts for the same cause of action as that alleged in the original counts.

2. In an action to recover the balance alleged to be due upon certain yarn spun for, and from time to time delivered to, the defendant, for all of which he had paid, except the last lot, he, by way of recoupment, claimed damages because all the yarn was not of the stipulated size. To prove this, he put in evidence a letter of the plaintiff wherein he, at the instance of the defendant, deducted from one of his bills five cents per pound on a specified quantity, and stated the balance. The plaintiff, being examined, was then asked by his counsel whether he accepted defendant's proposition to make the deduction on that lot because he admitted that the yarn was not according to contract, or to settle a controversy. He answered that it was to avoid a controversy. *Held*, that the answer was properly admitted.

ERROR to the Circuit Court of the United States for the District of Connecticut.

The facts are stated in the opinion of the court.

*Mr. C. E. Perkins* for the plaintiff in error.
*Mr. A. P. Hyde, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Due removal of the suit before the court was made from the State court where it was commenced, into the Circuit Court, in which case it is no longer usual to file new pleadings, the act of Congress providing that the practice, pleadings, and forms and modes of proceeding in common-law actions shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time, in like causes, in the courts of record of the State within which such Circuit Court is held, any rule of court to the contrary notwithstanding. 17 Stat. 197 ; Rev. Stats., sect. 914.

Sufficient appears to show that the writ in the practice of the State courts contains the declaration, the command of the same to the sheriff being that he shall summon the defendant to appear and answer to the plaintiff in a certain plea, wherein is set forth the cause of action. Pursuant to that practice, the defendants in this case were summoned to appear in a plea of the case, the declaration containing two counts in assumpsit, — the first being a count for goods sold and delivered, in the sum of $8,000, in two forms ; the second being a count for work and labor done and performed, in the sum of $8,000, at the special instance and request of the defendants. Both counts are in the usual form, and the declaration concludes with the usual breach alleging non-payment, to the damage of the plaintiffs in the sum of $10,000. Personal service was made ; and the defendants having appeared and removed the cause into the Circuit Court, pleaded the general issue that they never did assume and promise in manner and form as the plaintiffs in their declaration have alleged, and tendered an issue to the country.

Special matter may be given in evidence under the general issue, according to the State practice, if previous notice be given by the defendant or defendants. Such notice was given by the defendants in this case, that they would give in evidence a written agreement, and the extension of the same for one year, which is fully set forth in the transcript. *Profert* of the

instrument was made, and the defendants averred that the supposed promises were made, if ever, in consideration of work and labor done by the plaintiffs in the pretended performance of the stipulations and agreements in said written contract contained, in respect to which the defendants allege that the plaintiffs did not keep and perform their said agreements and obligations, to the damage of the defendants in the sum of $20,000, and greatly exceeding the amount that would be due to the plaintiffs for the alleged labor and work they had performed. What they claim is to set off so much of said damages as may be sufficient to extinguish their indebtedness to the plaintiffs; and to recoup and recover the excess of the $20,000 by a judgment in their favor.

In addition to the notice of such special matter, they also pleaded the Statute of Limitations, which, it seems, would not be admissible under the general issue and notice of special matter.

Leave was asked by the plaintiffs to file two additional special counts; and the court allowed them to file the one called in the transcript the second special count, subject to the objection of the defendants. Preliminary matters being closed, the parties went to trial, and the verdict and judgment were for the plaintiffs in the sum of $7,978.84. Exceptions were filed by the defendants, and they sued out the present writ of error, and removed the cause into this court.

Two errors are assigned in this court, as follows: 1. That the Circuit Court erred in allowing the new count to be filed. 2. That the court erred in admitting parol evidence of the plaintiffs' intention in writing the letter set forth and described in the transcript.

1. Amendments to the declaration under the State statute may be made by the plaintiff to correct any defect, mistake, or informality in the same, not changing the form or ground of the action; and he may insert new counts in his declaration for the same cause of action as that alleged in the original counts. State Stats., Revision 1875, 426.

Authority is also given by the same statute to insert counts in any form of action which might have been originally inserted in the declaration. As quoted, the word " in " before

" which," as found in the published statute, is left out, it being regarded as a misprint, or, if not, that the word " declaration " should follow it, which would give the provision the same meaning as if the word " in " was omitted. Nor is it necessary in this case to construe that provision, as it is clear that the question before the court is controlled by the preceding part of the section, which authorizes the plaintiff to insert new counts in the declaration for the same cause of action as that alleged in the original counts, as well as to correct any defect, mistake, or informality in the declaration, not changing the form or ground of action.

Such amendments to the declaration are allowed in the State courts with great liberality, and it appears that the practice is carried to such an extent as to justify the remark of the court in a case cited for the plaintiffs, that the decisions of other States furnish but little guidance in expounding the meaning of their statute upon the subject. *Nash* v. *Adams*, 24 Conn. 33–38.

Their original statute was passed at a very early period, and has been several times amended so as to enlarge and extend the power of the court, and the course of the decisions in the courts has been in the same direction, so as to further the beneficial purpose intended by it, which was to prevent the plaintiff from being put to a new action when by accident, mistake, or inadvertence he had in his declaration failed to describe his claim with legal accuracy. In a great proportion of the cases, say the court, where amendments are allowed, the ground of action is in one sense changed, as where for instance the note in suit is incorrectly described ; but amendments in such cases are very frequent where the court is satisfied that the error arose merely from mistake or inadvertence, and that the action was intended to be brought for the cause of action described in the amendment.

Other examples of like import are given in the opinion, and the court remarks that the phrase, " ground of action," is not used in the statute in any technical or narrow sense, but was intended to refer rather to the real object of the plaintiff in bringing the suit than to the technical meaning of the words ; and added, that such a construction had always been given to

the phrase as would further that object.   *Bulkley* v. *Andrews*, 39 Conn. 523, 535.

Where power is given to the court to allow the amendment, the ruling of the court in that regard is a matter of discretion, and is not the subject of error.   *Stuart* v. *Corning*, 32 id. 105, 108 ; *Merriam* v. *Langdon*, 10 id. 460, 472.

New counts setting forth more specifically the cause of action mentioned in the prior counts are not objectionable, as it cannot be held in such a case that the new counts describe a new cause of action.   *Baldwin* v. *Walker*, 21 id. 168, 180 ; *Hollister* v. *Hollister*, 28 id. 178, 180.

Whenever the declaration misdescribes a writing which constitutes the cause of action, the State courts will allow the plaintiff to amend and make the description accurate, and it is even held that in an action for a breach of covenant the plaintiff may add a new count setting forth a new and distinct incumbrance not previously mentioned in the declaration. *Spencer* v. *Howe*, 26 id. 200.

Cases appealed, it is held in that State, may be amended in the appellate courts ; and the rule is well settled, that if the new counts are founded upon the same transaction as the old ones, they do not change the ground of action, within the meaning of the act allowing amendments.   *Howland* v. *Couch*, 43 id. 47–50.

Writs of summons or attachment in that State may be sued out in civil actions, and the defendant, as matter of argument, to show that the amendment was improperly allowed in this case, insists that its effect would be to discharge an attachment, as it would otherwise enlarge the lien which the attachment created.   Two answers may be made to that suggestion in the case: 1. It is not shown that any of the property of the defendant was attached by the sheriff.   2. But if it was, the defendant will not be injured if the plaintiff sees fit to discharge his attachment.

Without more, these authorities are sufficient to show that the ruling of the Circuit Court in allowing the amendment was fully justified by the State decisions, and that it is correct.

Suppose that is so, still it is insisted by the defendants that

the ruling of the court embraced in the second assignment of error was erroneous, and that the judgment for that cause must be reversed.

Articles of agreement were executed between the parties to the effect that the defendants agreed to furnish for the plaintiffs cotton of a certain description, to keep the mill of the plaintiffs supplied for a certain time, the cotton to be manufactured by the plaintiffs into yarn, two-threaded and of a certain described fineness, for thirty cents per pound, allowing sixteen per cent for waste. Cash payments the first day of each month were to be made by the defendants for manufacturing the yarn. Under that contract, as set forth at large in the transcript, the defendants delivered a large amount of cotton to the plaintiffs, who manufactured it into yarn, which they delivered to the defendants. Invoices of cotton purchased by the defendants were shipped to the plaintiffs; and when the same was manufactured into yarn by the plaintiffs, the yarn was sent back in bags, accompanied with invoices, to the defendants.

Accounts between the parties were rendered monthly, and, when adjusted, the plaintiffs drew upon the defendants for the money due for manufacturing the yarn; and it appears that the drafts were uniformly paid until the last month of the contract. Payment of the last draft being refused, the plaintiffs brought assumpsit, and furnished the defendants with the bill of particulars exhibited in the record.

It appears that the defendants were tape manufacturers, and that they procured the yarn for the purpose of manufacturing tape, and they offered evidence tending to show that when the contract terminated they had on hand a large quantity of yarn not woven into tape, which they had tested, and for the first time discovered that it was of a coarser quality than that specified in the contract, and they alleged that if the whole was of that quality they had been seriously damaged.

Opposed to that, the plaintiffs offered evidence tending to disprove that charge, and to show that during the early part of the contract they, at the request of the defendants, manufactured a certain quantity of yarn for them of a lower grade, and that if the defendants had on hand any of a lower grade than

the contract required, it must be part of that so manufactured by the plaintiffs at the request of the defendants, who accepted the same with full knowledge of its defects.

Four letters upon the subject were written by the defendants to the plaintiffs, and in the course of the trial the defendants gave those letters in evidence, together with one written to them by the plaintiffs in reply to the last of their series. In that letter the plaintiffs refer to the fact that the defendants claim a deduction of five cents per pound on a specified quantity of the yarn, and state that they deduct that amount from the bill, adding to the effect that it leaves a balance due of $2,680.24, &c.

For the purpose of rebutting any alleged admission contained in that letter, the plaintiffs gave notice to the defendants to produce the letters written by the plaintiffs in reply to the other letters to them given in evidence by the defendants. Said letters not having been produced, and it appearing that no copies had been kept and that the originals were mislaid or lost, parol evidence of their contents was admitted, which showed that the plaintiffs denied the assertion of the defendants that the yarn was of a lower grade than the contract required; and they called the surviving partner of the firm, who was the writer of the letter of the plaintiffs given in evidence, and he was asked by the counsel of the plaintiffs whether he intended in and by that letter to admit that the defendants' claim for damages was valid and that the yarn was below the contract grade, to which question the counsel of the defendant objected, and the court sustained the objection and excluded the testimony.

Failing in that, the plaintiffs then asked the witness whether his acceptance of the defendants' proposition to deduct five cents per pound from the quantity of yarn named was because he admitted that the yarn was not according to contract or to settle a controversy. Seasonable objection was made to the question by the defendants; but the court overruled the objection, and the witness answered that he accepted the proposition because he did not wish to be obliged to commence a lawsuit in the city of New York, and to incur the expenses of a trial in the courts of that State; and the defendants excepted to the ruling of the

court, which is the foundation of the second assignment of error.

Evidence was then introduced by the plaintiffs showing that the defendants refused to pay the draft for the balance, making that deduction, and that they demanded the same reduction in price upon all the yarn previously manufactured and delivered. Certain exceptions were also taken to the charge of the court, but they are not embraced in the assignment of errors, and for that reason will not be re-examined.

Doubtless the general rule is that it is the province of the court to construe written instruments; but it is equally well settled that where the effect of the instrument depends not merely on its construction and meaning, but upon collateral facts and extrinsic circumstances, the inferences of fact to be drawn from the paper must be left to the jury, or, in other words, where the effect of a written instrument collaterally introduced in evidence depends not merely on its construction and meaning, but also upon extrinsic facts and circumstances, the inferences to be drawn from it are inferences of fact and not of law, and of course are open to explanation. *Etting* v. *The Bank of the United States*, 11 Wheat. 59; *Barreda* v. *Silsbee*, 21 How. 146, 167.

Other cases have been decided by this court in which the same principle was applied, and in which the doctrine is more fully explained and illustrated. *Iasigi* v. *Curtis*, 17 How. 183, 196.

Damages were claimed by the plaintiff in that case for a false representation respecting the pecuniary standing of a third person, whereby he, the plantiff, had been induced to sell goods and had incurred loss. Letters were introduced and facts and circumstances connected with the letters proved; and this court held that it was for the jury to say, after examining the letters in connection with the facts and circumstances, whether they were calculated to inspire and did inspire a false confidence in the pecuniary responsibility of the party, to which the defendant knew he was not entitled.

Admissions by a party or by an authorized agent, either in court or out, may in general be given in evidence; but the circumstances surrounding the admission, the purposes for which

it was made, and the conditions attached to it, may be fully shown. It may not infrequently happen that the party making the admission is not bound by it, and will not be estopped from denying its truth, and in view of the showing on both sides, allowing each to prove the whole truth, it will be for the jury to determine how the proof stands on the facts in controversy on which the admission is claimed to bear. *Perry* v. *Simpson Waterproof Manuf. Co.*, 40 Conn. 313, 317.

The defendants charged at the trial that the act of the plaintiffs in making the deduction proposed by the defendants was presumptive evidence that the plaintiffs admitted that they had not fulfilled their contract. This was expressly denied by the plaintiffs. On the other hand, the plaintiffs claimed that their act in making the deduction, taken in connection with the fact that they explicitly denied that they had broken their contract, was presumptive evidence, not that they admitted a breach of the contract, but that they made the deduction to avoid the expense of litigation. Neither of the presumptions was contrary to the language of the letter, and inasmuch as it was doubtful what the precise intent of the writer was, it is clear that the question of intention was open to explanation.

Parol evidence is admissible to contradict or vary the language of a valid written instrument, by which is meant that the language employed by the parties in making it, and no other, must be used in ascertaining its meaning. Argument to support that proposition is unnecessary, and yet it is universally admitted that it may be read in view of the subject-matter and the attendant circumstances, in order more perfectly to understand the meaning and intent of the parties. 1 Greenl. Evid. (12th ed.), sect. 277.

Written instruments as used in the rule, says Taylor, include not only records, deeds, wills, and other instruments required by statute or by the common law to be in writing, but every document which contains the terms of a contract between different parties. Text-writers everywhere support that rule; but Taylor admits that the rule will not strictly apply to certain less formal documents, of which he gives several examples. 2 Taylor, Evid. (6th ed.) 988.

Extrinsic evidence, it may be admitted, is not admissible in

expounding written contracts to prove that other terms were agreed to, which are not expressed in the writing, or that the parties had other intentions than those to be inferred from it; still it is competent, said Shaw, C. J., to offer parol evidence to prove facts and circumstances respecting the relations of the parties, the nature, quality, and condition of the property which constitutes the subject-matter respecting which it was made. *Knight* v. *The New England Worsted Co.*, 2 Cush. (Mass.) 271–283.

Where a party was about to publish an advertising chart, and the defendant promised in writing to pay him fifty dollars for inserting his business-card in two hundred copies of the chart, the Supreme Court of Massachusetts held, in an action to recover the amount, that parol testimony was admissible for the interpretation of the contract and its application to the subject-matter, that at the time of the making of the agreement the plaintiff represented and promised that his chart should be composed of a certain material and be published in a certain manner. In disposing of the case, the court advert to the rule that the obligation of a written contract cannot be abridged or modified by parol evidence, but add that it is equally well settled that, for the purpose of applying the terms to the subject-matter and removing or explaining any uncertainty or ambiguity which arises from such application, parol testimony is legitimately admissible, and for that purpose all the facts and circumstances of the transaction out of which the contract arose, including the situation and relation of the parties, may be shown. Authorities in great numbers are cited in support of the proposition; and the court further say, that the purpose of all such evidence is to ascertain in what sense the parties themselves used the ambiguous terms in the writing which sets forth their contract. *Stoops* v. *Smith*, 100 Mass. 63–66.

Apply the strictest rule to the question, and it is clear that the ruling of the Circuit Court is correct, as the answer of the witness, which was admitted, did not tend in any view to contradict any thing stated in the letter; but the ruling of the court may also be sustained upon the ground that the letter was a mere offer of compromise, which could not prejudice the rights of the plaintiffs, especially as the record shows that the

defendants subsequently refused to pay the draft drawn for the balance.

Offers of compromise to pay a sum of money by the way of compromise, as a general rule, are not admissible against the party making the offer; but if admitted, it is clear that the offer is open to explanation, no matter whether it was by letter or by oral communication. *Gerrish* v. *Sweetser*, 4 Pick. (Mass.) 374; *Bridge Company* v. *Granger*, 4 Conn. 142, 148; *Stranahan* v. *East Haddam*, 11 id. 507, 513.

By all or nearly all the cases the rule as established is not that an admission made during or in consequence of an effort to compromise is admissible, but that an offer to do something by the way of compromise, as to pay sums of money, *allow certain prices*, deliver certain property, or *make certain deductions*, and the like, shall be excluded. These cannot be called admissions, as they were made to avoid controversy and to save the expenses of vexatious litigation.

Decided cases may be found where it is said that the evidence is admissible unless the offer made was stated to be without prejudice; but the rule in general, both in England and the United States, is that the offer will be presumed to have been made without prejudice if it was plainly an offer of compromise. *Lofts* v. *Hudson*, 2 Man. & R. 481–484; Phil. Evid. (5th Am. ed.) 427, note 124; 1 Greenl. Evid., sect. 192.

Suffice it to say that such evidence having been admitted, it was clearly competent to give evidence to explain it, especially as the evidence given did not contradict any of the terms of the letter introduced by the defendants.

*Judgment affirmed.*