PENDERY et al. v. CARLETON.

SAYER et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. May 2, 1898.)

Nos. 982 and 983.

1. APPEAL—AMENDMENT OF PLEADINGS—OBJECTION NOT RAISED BELOW.
Defendants, who have answered an amended bill, and given evidence and submitted the cause thereunder, without objection, cannot, on appeal, raise the point that it states a different cause of action from the original bill.

2. CHANCERY PRACTICE—AMENDED BILL—NEW CAUSE OF ACTION.
Amendments to a bill, consisting merely of the omission of all allegations against one defendant, and changes in the prayer for specific relief made necessary by such omission, do not make the bill state a new and independent cause of action.

3. SAME—LACHES.
Where a bill of complaint, filed in due season, was, upon hearing, dismissed as to one defendant, and leave granted to amend as to the others, and an amended bill, subsequently filed, contained practically the same allegations as to such other defendants, the defense of laches cannot prevail, even if an original bill filed at the time of the amended bill would have been open to that objection; it not appearing that the complainant was solely responsible for the slow progress of the proceedings under the original bill.

4. CORPORATION—EQUITABLE TITLE TO STOCK—ACCOUNTING.
A mining company contracted with complainant for the purchase of his interest in certain mining property, in consideration of a certain proportion of its capital stock, which stock, however, was never issued to him. Later, the board of directors, in good faith, ordered a sale of all the company's stock to pay expenses of development, and purchased it themselves, but without taking undue advantage of any other interested parties. Finally, the property, proving of little or no value for mining purposes, was sold,—the sale being an advantageous one,—and the proceeds divided among themselves by the directors, who believed themselves to be the only shareholders. On suit against the directors for an accounting, *held*, that complainant was the equitable owner of the agreed amount of stock, and was entitled to such proportion of the net proceeds of the sale as his stock bore to the total capital of the company, and no more, with interest from the date of filing the amended bill asking such accounting.

5. SAME—SALE OF PROPERTY.
Where all the property of a corporation is sold, and a regular conveyance thereof executed, the fact that the purchaser, as a precautionary measure, requires an assignment to him of all the stock of the corporation, does not make the transaction a mere sale of the stock, rather than of the property; and the proceeds belong to the corporation, and not to the individuals transferring the stock.

Appeal from the Circuit Court of the United States for the District of Colorado.

On July 19, 1883, John K. Carleton, the appellee, exhibited his bill of complaint against John L. Pendery, Luther M. Goddard, Charles I. Thomson, and

Daniel Sayer, the appellants, and against James Armstrong, George W. Melville, L. R. Tucker, William S. Ward, and the Portland Mining Company, in the circuit court of the United States for the district of Colorado. The case stated by the bill was as follows: Prior to the 3d day of January, 1881, the complainant was the owner of an undivided $11/_{32}$ of a mining claim known as the "Portland Lode," situated in the county of Lake, state of Colorado. George S. Coryell and Edmund H. Watson each owned an undivided $1/_4$ interest in said claim, James E. Fuller $4/_{32}$ thereof, and the defendant John L. Pendery an undivided $1/_{32}$. In the month of January, 1881, John L. Pendery, Luther M. Goddard, George W. Melville, Charles I. Thomson, and Daniel Sayer formed a corporation known as the Portland Mining Company, under the laws of the state of Colorado, for the purpose of acquiring title to the aforesaid mining claim; the capital stock of said corporation being $1,000,000, divided into 10,000 shares, of the par value of $100 each. The parties last above named, to wit, Pendery, Goddard, Melville, Thomson and Sayer, together with James Armstrong and L. R. Tucker, became the board of directors of said corporation for the first year. At a meeting held by said board on March 29, 1881, Pendery was elected president, Goddard, vice president, Armstrong, secretary, and Thomson, treasurer, of said company. At said meeting a resolution was passed by the board to the effect that the owners of the Portland lode, should receive $5/_6$ of $1/_2$ of the capital stock of said company, as a consideration for the conveyance of their respective interests in said property to the corporation, each owner to receive such a share of the stock as would be in proportion to his interest in said Portland lode,—and that $5/_6$ of the remaining $1/_2$ of the capital stock be reserved as a fund for the purpose of working and developing the property. On May 6, 1881, Carleton, the complainant below, who was the owner of an undivided $11/_{32}$ of the mining claim aforesaid, was induced to convey his interest in the property to the mining company aforesaid, which had just been formed, by its promise and agreement that it would issue and deliver to him $11/_{32}$ of $5/_6$ of $1/_2$ of its capital stock, to wit, 1,430 shares, of the par value of $100 each. When such conveyance was made, the complainant was at Portland, Me., and the deed conveying his interest was there executed, and transmitted to the Portland Mining Company at its office in Leadville, Colo. On receipt of the conveyance by the mining company, it was duly recorded. The mining company failed to deliver to the complainant any of its stock pursuant to the aforesaid agreement. On May 12, 1882, the mining company conveyed the property in question to the defendant William S. Ward. The bill charged that no consideration was paid by William S. Ward to the Portland Mining Company for the conveyance last aforesaid, and that said conveyance was made in pursuance of a conspiracy between Pendery, Goddard, Thomson, Armstrong, Sayer, Tucker, Melville, and Ward to deprive the complainant, Carleton, of his interest in the Portland lode, and of his share of the capital stock of said mining company. It also averred that, when Ward acquired title to the aforesaid property, he was well aware that the complainant had been the owner of an undivided $11/_{32}$ of the property before its conveyance to the mining company, and was well aware of the agreement by virtue of which the complainant had been induced to convey his interest to said mining company, and that the consideration promised him for so doing, to wit, $11/_{32}$ of $5/_6$ of $1/_2$ of the capital stock of the company, had not been paid or delivered. In view of the premises the bill prayed that the aforesaid conveyance from the Portland Mining Company to said Ward might be set aside, and the title to the lode restored to the Portland Mining Company; that the defendants Pendery, Goddard, Thomson, Armstrong, Sayer, Tucker, Melville, and Ward, as directors of said mining company, might be required to issue and deliver to the complainant such portion of the capital stock of said company as he was entitled to under the aforesaid agreement; and that, if such relief was not deemed adequate, the Portland Mining Company might be required to convey to the complainant his interest in said lode, so as to vest him with the title to $11/_{32}$ thereof, as fully and completely as if no conveyance had theretofore been made by him to said mining company.

Answers were filed to the aforesaid bill, testimony was taken, and at a hearing had on June 21, 1890, it was adjudged by the circuit court that the bill of complaint be dismissed as against the defendant William S. Ward, but that the complainant below have leave to amend his bill as against the other defendants at any time within 30 days thereafter, and that the defendants other than said William S. Ward be required to answer the averments of such amended

bill within 30 days after the service of a copy thereof. Pursuant to such order, an amended bill was filed on July 19, 1890. The amended bill differed from the original bill in the following respects; that is to say: It charged that the Portland lode had been sold by the mining company to the defendant William S. Ward about May 13, 1882, for the sum of $30,000. It omitted the allegations made in the original bill which tended to show that Ward had acted fraudulently, and conceded, in effect, that said Ward was a purchaser of the property for value, and in good faith. It charged that the other defendants, to wit, Pendery, Goddard, Thomson, Armstrong, Sayer, Tucker, and Melville, had managed to dispose of the greater portion of the capital stock of the Portland Mining Company, and had wrongfully appropriated to their own use the moneys which were received from the sale thereof, and that by their mismanagement of the corporate affairs they had utterly destroyed the value of the mining company's stock. It also charged that the defendants last aforesaid had failed to account to the complainant for his share of the capital stock of the Portland Mining Company, and had not paid to him his portion of the same which was received from the sale of the property to the defendant Ward, and that they had appropriated to their own use moneys to which the complainant was entitled by reason of the agreement of the mining company to issue to him $^{11}/_{32}$ of $^{5}/_{6}$ of ½ of its capital stock. The prayer of the amended bill was, in substance, as follows: That the defendants be required to show what sum they had received for and on behalf of the Portland Mining Company, from all sources; in what manner they had expended the same; and that after such accounting they be adjudged and required to pay to the complainant his proportion of the moneys to which he was entitled as the owner of an interest in said property, and as the equitable owner of the capital stock of the company, to the extent heretofore stated; and that the complainant have such other and further relief as to equity and good conscience might seem proper.

The defendants Charles I. Thomson and Daniel Sayer, who are appellants here, joined in an answer to the amended bill of complaint, which answer, after admitting the organization of the Portland Mining Company, and several other allegations contained in the amended bill, stated, in substance, the following facts: That said defendants were partners engaged in the practice of law under the firm name of Thomson & Sayer, and prior to January, 1881, had rendered certain legal services for and on behalf of the original owners of the Portland lode, on account of which services they had become entitled to an undivided ⅛ interest in said lode; that upon the organization of the Portland Mining Company their right to the aforesaid interest in the lode was duly recognized by the mining company, whose directors passed a resolution (being a part of the same resolution which is referred to in the bill of complaint) by which it was provided that ⅛ of ½ of the company's stock should be issued to the defendants, and also ⅛ of the treasury stock which might remain unsold after the development of the mine; that it was also understood and agreed by the directors of the mining company that each person who was an owner of an interest in the mine at the time it was conveyed to the mining company should have the right to purchase an amount of the treasury stock which was reserved for development purposes, proportionate to his interest; that the defendants subsequently purchased the ¼ interest of George E. Coryell in said lode, which is referred to in the bill of complaint, and that by virtue of such purchase they succeeded to all of his rights in and to the stock of the mining company. Defendants further averred that the resolution passed by the directors of the mining company, which is referred to by the complainant in the bill of complaint, and on which he mainly founds his right to relief, was superseded on the very day it was passed by another resolution of the board of directors of the mining company, which provided, in substance, that none of the stock of the mining company should be issued until warranted by the development of the lode, and until its product was sufficient to pay working expenses; that 5,000 shares of its stock should be set aside for development purposes, and offered at the minimum price of 50 cents per share to the persons interested in the company, in proportion to their respective interests; that, if such persons failed to purchase such stock, the same should be thereupon offered to outside parties at the same price; that, if the amount of stock reserved for development purposes should prove insufficient for that purpose, then other portions of the stock should be set aside and sold in the same manner; and that the residue of the stock after the development of

the property should be divided among the persons interested in the mining company in proportion to their respective interests. The defendants also averred that in point of fact no stock was ever issued to them as provided in either of the aforesaid resolutions; that no stock was issued under either of said resolutions to any persons interested in the mining company; that the stock of the company was in fact sold from time to time, to realize money for development purposes, at prices which were fixed by the directors; that every share of stock which the said defendants ever received was bought and paid for by them in money, at prices fixed by the directors; and that the entire amount of stock so purchased and received by them did not exceed, in the aggregate, 2,300 shares, and was less than the amount which they were entitled to receive and purchase under and by virtue of the plan of distribution proposed by the aforesaid resolutions. Said defendants also alleged that, at the time the Portland Mining Company was organized, it was the understanding among all the incorporators that the defendant John L. Pendery had a contract with the complainant, John K. Carleton, under and by virtue of which he was entitled to represent said Carleton both in the organization of said Portland Mining Company, and in the management of its business after it was organized; that said defendants had no information until the commencement of this suit that said Carleton asserted any claim to, or had any interest in, the stock of the mining company; and that the defendants were entirely ignorant of any arrangement or agreement between said Carleton and the mining company, under and by virtue of which he had conveyed his interest in the Portland lode to the mining company, in consideration for its undertaking to issue to him the $11/_{32}$ of $5/_6$ of $1/_2$ of its capital stock. With reference to the stock which said defendants had acquired from the Portland Mining Company, they alleged, in substance, that they had sold said stock to the defendant William S. Ward for the price of $2.70 per share. They admitted, however, that, when such sale of their stock was made to said Ward, they understood that said Ward desired the mining company to execute a deed for the Portland lode, and that, with such knowledge, they, together with the other directors of the company, had assented to the execution of such deed.

The defendants John L. Pendery and L. M. Goddard, who are appellants here, also filed a joint answer to the amended bill of complaint. Their answer differed from that of their co-defendants Thomson and Sayer chiefly in the following respects: Pendery and Goddard admitted that at the first meeting of the Portland Mining Company held on March 29, 1881, a resolution was passed by the directors of the company to the effect that the then owners of the Portland lode should receive $5/_6$ of $1/_2$ of the capital stock of said company as a consideration for the conveyance of the property to the company,—each owner to receive such a share of said stock as would be in proportion to his interest in the Portland lode,—and that $5/_6$ of the remaining half of the capital stock should be reserved to realize a fund for the development of the property. They averred, however, that such resolution never became operative, but was superseded by a resolution passed on the same day, the terms of which are set forth, in substance, in the joint answer of their co-defendants Thomson and Sayer, heretofore quoted. They denied that the Portland Mining Company obtained a deed from the complainant for his interest in the Portland lode in consideration of its promise to issue to him $11/_{32}$ of $5/_6$ of its capital stock, or any other portion thereof whatsoever. They averred that the only correspondence had between the mining company and the complainant relative to the acquisition of his interest in the Portland lode was conducted on behalf of said company by its secretary, James Armstrong, and that said Armstrong had no authority whatever from the company or its directors to obtain a deed from the complainant for his interest in the Portland lode in consideration for the issuance to him of any part of the company's capital stock, and that, if said deed had been obtained in pursuance of any such agreement or promise made by said Armstrong, his action in that behalf was without the knowledge or consent of the board of directors of the mining company. They averred that, in selling and disposing of the stock of the mining company after its organization, the board of directors of the company had acted altogether under the provisions of the second resolution above stated; that they had sold stock from time to time, in pursuance of that resolution, to pay the indebtedness of the company, and to obtain money wherewith to develop the property; that the said defendants Pendery and Goddard, and their co-defendants Thomson and Sayer, had purchased all of the stock of the company that was ever issued.

and sold under the aforesaid resolution, and that they had been compelled to purchase the stock from time to time because all other persons interested in the mine had refused to purchase it, in order to obtain money wherewith to discharge the indebtedness of the company that had been incurred for development purposes. They further averred that all the stock of the mining company which they had thus acquired they had subsequently sold to William S. Ward, at the rate of $2.70 per share, and that all the money which they had at any time realized from sales of stock had been applied by them, in good faith, in developing the mining property, and in paying the indebtedness of the company, and for no other purpose whatsoever.

The Portland Mining Company filed a separate answer to the amended bill, but it is unnecessary to state the contents thereof, since the mining company has not perfected an appeal.

Prior to the filing of the aforesaid answers, the defendants Pendery, Goddard, Thomson, and Sayer joined in a general demurrer to the amended bill, which was overruled. Replications to the aforesaid answers to the amended bill having been filed, and additional testimony having been taken, both by the complainant and the defendants, the cause was submitted to the circuit court on February 8. 1897, for final decision upon the amended bill, the answers thereto, and the proof taken in support thereof. On March 1, 1897, the trial court rendered a decree against the defendants for the sum of $8,593.31. A joint appeal from that decree was taken by the defendants Pendery, Goddard, and Thomson. The defendant Sayer was allowed a separate appeal, but both appeals are before us on the same record.

H. Riddell and J. C. Starkweather, for appellants Pendery, Goddard, and Thomson.

Thomas Mitchell (on behalf of Victor A. Elliott), for appellant Sayer.

Hugh Butler, for appellee.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is urged in the first place, as a sufficient ground for the reversal of the decree of the circuit court, that the amended bill of complaint on which the case was tried differs so essentially from the original bill that it cannot be regarded as an amendment thereof, and ought to have been rejected by the trial court. We would doubtless be justified in overruling this contention for the sole reason that it was not urged in the trial court in any appropriate form, or in any form whatever, so far as we can discover. When, upon the first hearing of the case, the original bill was dismissed as to the then defendant William S. Ward, and the complainant by the same order was granted leave to amend his complaint as to the other defendants, no objection was made or exception taken to such action. Furthermore, when the amended bill was filed no exceptions thereto were taken, or motion made to strike it from the files, on the ground that the facts averred were essentially different from those alleged in the original bill, and that the amended complaint amounted to an abandonment of the original cause of action. It is true that four of the defendants joined in a demurrer to the second pleading on the general ground that the complainant was not entitled to the relief prayed for therein, but in due season they filed answers to the amended bill which were sub-

stantially the same as the answers which they had previously interposed to the original bill. Afterwards they took considerable testimony in support of the allegations of their respective answers, and eventually submitted the case for such final decree as the court might deem proper to enter, without a suggestion, so far as the record discloses, that an error to their prejudice had been committed in allowing the amended complaint to be filed. The defendants below were apparently willing to meet the charges contained in the amended bill, without reference to the manner in which they had been made. Under these circumstances, we are of opinion that they have waived whatever right they may at any time have had to object to the amended bill on the ground that it stated a cause of action different from the one alleged in the original complaint. We are not willing, however, to concede that the objection which is urged to the amended bill, based on the ground above stated, was ever tenable. The material facts entitling the complainant to relief as against the defendants other than William S. Ward are stated alike, and with the same degree of fullness, both in the original and in the amended bill. The facts so alleged in both bills are, in substance, that the mining company had received a conveyance of the complainant's interest in the lode on the strength of its promise to issue to him $^{11}/_{32}$ of $^{5}/_{6}$ of $\frac{1}{2}$ of its capital stock, that the promise had not been fulfilled, and that the defendants, acting as directors of the company, and with full knowledge of complainant's rights, had caused the mining lode in question to be conveyed to the defendant Ward, with a view of depriving the complainant of his interest therein, and had thereby rendered the stock to which he was entitled, and which he ought to have received, valueless. On the first hearing under the original bill, the testimony showed to the satisfaction of the trial court that Ward was an innocent purchaser of the lode, for value; and by reason of that fact the trial court ruled that the specific relief prayed for in the original bill, namely, the cancellation of the deed to Ward, could not be granted. The complainant was accordingly required, as a condition precedent to obtaining any relief, to amend his complaint, to the end that such relief might be granted against the other defendants as the facts warranted. It may be admitted that the prayers for relief in the original and amended bills are essentially different, but we do not perceive any substantial change in the state of facts alleged in the respective bills, upon which the complainant predicated his right to relief as against the present appellants. It is not improbable, we think, that, under the prayer for general relief which was contained in the first complaint, the same decree could have been rendered by the trial court which was eventually rendered under the amended bill. We need not stop, however, on the present occasion, to consider this suggestion. It is apparent that the trial court deemed it necessary that the original bill should be amended, at least by changing the prayer for relief; and, whether that view was right or wrong, it is now unnecessary to determine. The original bill was amended to accord with the views of the lower court. The amendment consisted

in changing the prayer for specific relief which was contained in the original bill, and in omitting those allegations which tended to show that the defendant Ward was not an innocent purchaser, for value, of the Portland lode. Such changes, in our judgment, do not sustain the contention that the original cause of action, as against the appellants, was thereby abandoned, and that the amended bill stated a new and independent cause of action. We think that the second pleading may properly be regarded as possessing all the characteristics of an amended bill, and that, if any error was committed in requiring the complainant to change the form and structure of his original bill, the error so committed was prejudicial to the complainant, rather than to the defendants.

The views last expressed will serve to dispose of another proposition, which was argued at some length in behalf of the appellants, namely, that the complainant's right to relief is barred both by limitation and laches. This latter contention is founded altogether upon the theory that the amended bill stated a case other and different from the one which was stated in the original complaint, and that the amended pleading must for that reason be treated as an original bill filed on July 19, 1890. If this theory were tenable, it might well be that laches or limitation would be a good defense; but as we feel constrained to hold that both the original and amended bills allege substantially the same facts, and count upon the same transaction, there is no basis for the claim that the complainant has lost his rights by a failure to assert them at an earlier day. The original bill was filed in due season, to wit, on July 19, 1883; and as it stated the same cause of action, in substance, on which a recovery was eventually allowed, lapse of time cannot be successfully interposed as a defense. The litigation, since it was instituted, has progressed slowly, but we perceive no reason for holding that the complainant is solely accountable for the delay.

When the answers to the complaint were filed, it seems to have been the intention of a part of the defendants to contend that the Portland Mining Company never promised to issue $^{11}/_{32}$ of $^{5}/_{6}$ of $\frac{1}{2}$ of its capital stock to the complainant in exchange for a conveyance of his interest in the Portland lode, and to further insist that the representations to that effect which were made by James Armstrong, the secretary of the company, in his correspondence with the complainant, were made without lawful authority, and that they were not binding upon the company. It is conceded in the briefs, however, that this position is untenable, and that the company, by accepting a conveyance from the complainant of his interest in the lode, and by retaining it, thereby became bound by the representations of Armstrong, its secretary, on the faith of which the conveyance was executed. In view of this admission, the only further questions of law or fact arising upon the record which require notice are: First, whether the damages which were awarded by the trial court are excessive; and, second, whether the defendant Sayer is jointly liable with the other defendants for such damages.

The testimony shows, without any substantial contradiction, that, when the complainant conveyed his interest in the Portland lode to the mining company, he was well aware that the company had reserved and intended to devote one-half of its capital stock, or such part thereof as might be found necessary, to realize funds for development purposes. That fact was stated, in effect, in the letter of Armstrong, the secretary of the company, on the faith of which the complainant claims to have executed a conveyance of his interest in the lode. The testimony further tends to show that all the stock of the company which was at any time issued or sold was so disposed of either to obtain funds to develop the mine, or to pay debts which had been contracted by the company for that purpose. No stock seems to have been sold or distributed for other purposes. In view of these facts, we can perceive no reasons which will entitle the plaintiff to complain of the sale of at least one-half of the capital stock of the company. It was sold, as he was informed it would be; and the proceeds thereof were applied, as he understood they would be applied, to the development of the property, and he must be held to have assented both to the sale of at least one-half of the capital stock, and to the use which was made of the proceeds. Moreover, we do not understand that the complainant at the present time either denies the right of the directors of the mining company to sell the lode to William S. Ward, or that he questions the propriety of their action in that behalf, provided the property was at the time unproductive, and the company was without means to further develop it or make it productive. That such conditions did exist at the time of the sale is a fact concerning which we can entertain no doubt, on the testimony contained in the record. The proof shows to our entire satisfaction that, after considerable development work had been done on the lode in controversy, it proved to be of little or no value as a mineral-bearing lode, that all persons who were in any wise interested in the property were benefited by the sale thereof to the defendant Ward, and that the directors acted wisely in negotiating the sale. It is to be observed, further, that by his amended bill the complainant prays that the defendants be required to show what sums of money they have received from all sources for and in behalf of the mining company, how they have disposed of the same, and that after such accounting the defendants be required to pay to the complainant that proportion of whatever balance is found to be in their hands, to which he is entitled as the equitable owner of $^{11}/_{32}$ of $^{5}/_{6}$ of $\frac{1}{2}$, or in other words, 1,430 shares of the capital stock. We are compelled to regard this prayer for relief as an election on the part of the complainant to accept in lieu of other damages such a part of the corporate assets as the ownership of 1,430 shares of the capital stock would entitle him to, after the corporate debts are paid. The prayer is, in substance, that the defendants, as directors, may be charged with all moneys received for and in behalf of the corporation, including moneys received from the sale of stock; that they be credited with all outlays for development work, or other legitimate corporate expenses;

and that the residue in their hands be divided among the stockholders, treating the complainant as a shareholder, to the extent of 1,430 shares. We think that the complainant is justly entitled to the special relief so prayed for in his amended bill; and in view of the fact that the defendants were probably ignorant of the complainant's right to 1,430 shares of the capital stock until after the sale of the mine, and the division of the proceeds among themselves, we are furthermore of opinion that he is not entitled to other or greater relief at this time.

The testimony contained in the record does not disclose that the mining company owed any debts at the time of the sale and conveyance of all of its property to the defendant Ward for the sum of $30,000, other than a commission of $3,000 for negotiating the sale. This latter sum was deducted from the purchase price of the mine at the time of the sale, leaving a net balance of $27,000. The money necessary for development work and other necessary corporate expenses had been obtained by sales of stock from time to time, substantially in accordance with a resolution of the directors that was passed on March 29, 1881, under and by virtue of which the directors profess to have acted in selling stock for development purposes. The evidence does not show that the four defendants who are now appellants, to wit, Pendery, Goddard, Thomson, and Sayer, ever bought and paid for an amount of stock to supply money for development purposes in excess of 5,300 shares. If other stock was issued to them, it must have represented their original interest in the lode. Some stock (but precisely how much is not shown) was issued to persons other than the four directors last named, which stock was accepted, as it seems, in payment for labor, materials, and supplies that had been furnished to the company; and, in view of that fact, it is fair to infer that a large part, and probably all, of the capital stock of the company had been sold when the company conveyed its property to Ward, and ceased to be a going concern. The four directors above named, who were in office when the sale took place, admit that they divided among themselves the entire net proceeds of the sale, amounting to $27,-000, and that they did so upon the theory that they either owned, controlled, or represented the entire capital stock of the corporation, and were entitled to appropriate to their own use whatever remained of the corporate assets. They do not profess to have paid any debts of the company out of the proceeds of the sale, because all corporate debts had at that time been paid, or otherwise liquidated. It appears, therefore, that the corporation has ceased to do business; that it has disposed of all its property, and become practically dissolved; and that four of the directors who were in office when it ceased to do business have divided among themselves a sum of money belonging to the corporation which was adequate to return to each shareholder $2.70 upon each share of stock by him held, if we assume that the entire stock had been issued when the dissolution took place. In view of these facts, we can entertain no doubt that the complainant is entitled to a portion of the fund which the directors divided among themselves on the assump-

87 F.—4

tion that they were the only shareholders; and, as he was the equitable owner of 1,430 shares of the capital stock of the mining company, we think that he should be allowed $2.70 for each of the shares of stock by him held, or, in the aggregate, $3,861. Interest on this sum should also be allowed, at the rate of 6 per cent. per annum, from and after July 19, 1890, when the amended bill of complaint was filed. We think that no interest should be allowed prior to that date, because the defendants appear to have acted in ignorance of the complainant's right to the 1,430 shares of stock in question when they sold the mine and divided the proceeds; also, because the complainant expressed no willingness to accept his pro rata share of the sum realized from the sale of the mine prior to filing his amended bill, but before that time demanded other and different relief, accompanied with charges of fraud and conspiracy which have not been sustained. For these reasons, we consider it inequitable to allow interest prior to the date last above mentioned.

Respecting the claim of the appellant Daniel Sayer that he is exempt from liability because he simply sold his stock to Ward, and was not otherwise concerned in the action taken by the other defendants to transfer the property to Ward, we deem it sufficient to say that an examination of the testimony has led us to conclude that Ward bought the Portland lode, and paid $30,000, rather than the stock of the Portland Mining Company. As a precautionary measure, he doubtless made it a condition of the purchase that the several stockholders should assign their stock in the company, either to him, or to such persons as he might designate, to give him complete control of the corporation; but the fact that he required a conveyance of the property from the mining company, and that his proposition to the mining company was to buy the lode, has served to convince us that he bought the mine, and not the stock, and that the true nature of the transaction was well understood by all the defendants, including Sayer, when it took place. Such being the case, it must be held that the several sums of money received by the several defendants, including Sayer, were the money of the corporation, and not their individual property, which they were bound to account for to the corporation, and see that it was properly distributed among the shareholders to whom it belonged. Inasmuch as the defendants appear to have acted in concert, and to have agreed with one another that a certain sum might be paid to each, to be by him retained, and not accounted for to the company, they all participated in a wrongful disposition of the funds of the company, and are jointly accountable for the money which they collectively received.

It results from these views that the decree of the circuit court —the same being for an excessive amount—must be reversed. The case is accordingly remanded to that court, with directions to vacate its former decree, and in lieu thereof to enter a decree against the defendants, and in favor of the complainant, for the sum of $3,861, with interest to be computed thereon at the rate of 6 per cent. per annum from July 19, 1890, until the decree shall be fully

satisfied, together with all costs accrued or to accrue in the circuit court. The costs incurred in this court will be divided between the parties in the following proportions: Those incurred by the separate appeal of the defendant Daniel Sayer will be taxed against him. The balance of the costs will be taxed against the appellee.