## AMERICA LAND CO. v. CITY OF KEENE.
### No. 2444.

Circuit Court of Appeals, First Circuit.

June 5, 1930.

ANDERSON, Circuit Judge, dissenting.

Percy W. Gardner, of Providence, R. I. (Jonathan Piper [of Demond, Woodworth, Sulloway & Rogers], of Concord, N. H., on the brief), for appellant.

Robert P. Bingham, of Manchester, N. H. (Henry C. Arwe, of Keene, N. H., and De Witt C. Howe, of Manchester, N. H., on the brief), for appellee.

Before ANDERSON and WILSON, Circuit Judges, and HALE, District Judge.

WILSON, Circuit Judge.

A suit in equity was brought by the complainant to enjoin the enforcement of a so-called zoning ordinance adopted by the defendant city and to have the same declared invalid, and as an alternative relief, on the ground of bad faith in passing the ordinance, rescission of a deed for the conveyance of a tract of land to the plaintiff by the defendant, and, according to a special prayer in the bill also, to compel the defendant to repurchase the land and compensate the complainant in damages.

The bill as drawn was based in part on the unconstitutionality of the ordinance and in part on the ground that the city sold the land to the plaintiff with the assurance that it was fit for residential purposes, and later, by the passage of the ordinance, which classified the land in an "Unrestricted District," as it was termed, in which no dwelling houses could be erected without the consent of an adjustment board, created under the ordinance for the adjustment of questions arising thereunder, the salable value of said land for residential purposes was destroyed.

In the course of the hearing the plaintiff confined its testimony in the main to showing that the land was fit for residential purposes, or at least as suitable as other land nearby, which was given a different classifi-

cation under the ordinance, as bearing on its constitutionality, while the defendant city introduced evidence of the unfitness of the land for residential purposes because of its location and subjection to flooding at certain periods of the year and not being susceptible of good drainage, as bearing on its proper classification under the ordinance. It was upon these issues the case was tried below.

Upon the court below holding that the ordinance was a proper exercise of the police powers of the city, vested in it by the state for the purpose, and that the city acting in its corporate capacity could not be divested of that power by a deed or by any representations as to the suitability of the land conveyed for any particular purpose, and there was therefore no justiciable ground for relief in equity alleged in the bill, and upon the court ordering the bill dismissed, the plaintiff then offered an amendment, alleging fraud in withholding from the plaintiff at the time of the sale the knowledge of the land being unfit for residential purposes, which amendment the court refused on the ground that it was unnecessary and improper at the stage of the case at which it was offered. The bill as a whole, if the amendment were allowed, still seeks relief on the ground of an improper exercise of the police powers in enacting the zoning ordinance.

■■ The allowance of an amendment after hearing and the filing of a decision disposing of the case, while permissible under rule 19 of the Equity Rules (28 USCA § 723), and under the New Hampshire practice, is a matter within the discretion of the court. Whitaker v. Whitaker Iron Co. (D. C.) 238 F. 980, 981; Radio Corp. v. Emerson (C. C. A.) 296 F. 51, 56; Noble v. Portsmouth, 67 N. H. 183, 30 A. 419; State v. Collins, 68 N. H. 46, 36 A. 550; Lawson v. Kimball, 68 N. H. 549, 38 A. 380. There was no abuse of discretion in disallowing the amendment in this case. It either added nothing as a basis for equitable relief or it could avail the plaintiff only as a new cause of action, and was not consonant with the original bill. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; West v. Smith, 101 U. S. 263, 265, 25 L. Ed. 809; Hardin v. Boyd, 113 U. S. 756, 5 S. Ct. 771, 28 L. Ed. 1141; Smith v. Woolfolk, 115 U. S. 143, 148, 5 S. Ct. 1177, 29 L. Ed. 357; Union Pac. Rwy. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983; St. Louis, V. & T. H. R. Co. v. T. H. & I. R. Co. (C. C.) 33 F. 440, 448; Merriman v. Chicago & E. I. R. Co. (C. C. A.) 64 F. 535, 551; Savage v. Worsham (C. C.) 104 F. 18; Pendery v. Carleton (C. C. A.) 87 F. 41; Confectioners'

Machinery & Mfg. Co. v. Racine Engine & Mach. Co. (C. C.) 163 F. 914, 918; Galesburg & K. El. Rwy. Co. v. Hart (C. C. A.) 221 F. 7, 12; American Mills Co. v. Hoffman (C. C. A.) 275 F. 285, 292, 293; Procter & Gamble Co. v. Powelson (C. C. A.) 288 F. 299, 308; Simkins Federal Practice, chap. 85; Merrill v. Russell, 12 N. H. 79; Wiggin v. Veasey, 43 N. H. 313, 314; Page v. Jewett, 46 N. H. 441, 445; Smith v. Wiggin, 48 N. H. 105, 110; Stearns v. Wright, 50 N. H. 293, 295; Hotel Co. v. Redington, 55 N. H. 387, 388; Stebbins v. Ins. Co., 59 N. H. 143.

■ It was urged before this court that the case was an appropriate one for the allowance of an amendment to accord with the proof. Such a claim was not made during the trial of the cause, which was not tried on any issue raised by the amendment. While some of the evidence in the case may have a bearing on the allegations in the amendment, it does not follow that the defendant on the new issues thus raised would have had no other defense than it offered to the charge of an unconstitutional ordinance and bad faith in its adoption. It was not until the court had decided against the plaintiff on its bill as framed that the amendment setting up fraudulent concealment of facts was offered. Amendments after the case is closed proposing additional allegations to correspond with the proof are permitted when the parties have tried their case upon the theory set forth in the amendment, and any new issues thereby raised have, in the opinion of the trial court, been fully met.

The only questions before this court, as we view the case, are whether there was an abuse of discretion in denying the amendment; or, if no abuse of discretion, whether the bill was properly dismissed and the plaintiff left to its action at law, which is adequate for the recovery of damages; or whether the bill should have been retained, if there be any ground for so doing, and compensation in damages be recovered in equity.

■ We do not think there was sufficient ground in this case for determining the damages in a court of equity. Any ground of equity jurisdiction alleged in the bill has already been found to be lacking, and we think rightly so, and it is not a case where a plaintiff has proceeded in equity in good faith, but the defendant by his acts has deprived the plaintiff of the only relief a court of equity could give, in which case the court may retain the bill and allow the plaintiff to recover damages in the equity court as in Milkman v. Ordway, 106 Mass. 232, 233; Smith v.

Kelley, 56 Me. 64, 67; Chartier v. Marshall, 56 N. H. 478; Pomeroy, Eq. Juris. vol. 1, § 237. Here the complainant has brought its action with full knowledge of the facts alleged in its bill upon which it sought relief. The defendant has done nothing to deprive it of relief in equity, if the plaintiff was ever entitled to equitable relief. The plaintiff merely misconceived its rights in the premises. Pomeroy, Eq. Juris. § 237, note 3.

The conveyance of land to the plaintiff, even if the city officials had knowledge that it was to be divided into lots and sold for residential purposes, did not deprive the defendant of the right to exercise the police power vested in it by the state. Sanitary Dist. v. United States, 266 U. S. 405, 427, 45 S. Ct. 176, 69 L. Ed. 352; Denver & R. G. R. R. Co. v. Denver, 250 U. S. 241, 244, 39 S. Ct. 450, 63 L. Ed. 958; Texas & New Orleans R. R. Co. v. Miller, 221 U. S. 408, 414, 31 S. Ct. 534, 55 L. Ed. 789. In the one case it acted in its corporate capacity; in the other it was exercising the sovereign powers of the state. If the plaintiff was injured by the exercise of its police powers under the ordinance, it was, as the court below held, not a justiciable wrong, but damnum absque injuria.

The proposed amendment furnished no additional ground of equity jurisdiction. Rescission or cancellation of the deed cannot now be had, as the parties cannot be restored to the statu quo. Partial rescission cannot be had, except under circumstances which do not exist here. Lots have been sold, and on one, at least, a house has been built. Not all of the contracts of sale of lots have been repudiated by the purchasers, nor does it appear that the plaintiff's remedy at law for the damages upon the ground of deceit, if it has one, is not adequate.

The denial of the amendment proposed after the case was closed and decision rendered, alleging new matter, but which still left the bill based on an improper exercise of police powers, was certainly not an abuse of discretion. It is not a case where the plaintiff will lose his right of action in case the amendment was not allowed, as in Cogswell v. Hall, 185 Mass. 455, 70 N. E. 461, where justice might require a modification of the rule.

If under section 274a of the Judicial Code (28 USCA § 397) and equity rule 22 (28 USCA § 723), a plaintiff may try out his case in equity on one theory, and, failing on the merits on the grounds set forth in the bill, obtain permission of the court to try his case at law on an entirely different ground by an amendment or an "alteration of the pleadings," he may always have a second trial, provided, after hearing the evidence, he can invent some new and plausible claim. He may thus force a defendant to the expense of defending an unfounded claim without even costs to the plaintiff, unless imposed as a condition of some amendment. It would be a perversion of the statute and rule to permit such injustice.

The statute or rule does not say that every suit improperly brought in equity shall be amended and transferred for a try at law, but only when the particular action brought in equity should have been brought at law. The action at bar, on the theory set forth in the bill, or with the proposed amendment, could not be maintained either at equity or law.

Even if it was proper under section 274a of the Judicial Code and the equity rules for the case to be transferred to the law side and tried under new pleadings, the plaintiff has made no such request, preferring to rely for its relief on the equity side of the court. This court will not compel a litigant to transfer its action from equity to law or vice versa against its will. Fay v. Hill (C. C. A.) 249 F. 415; Mobile Shipbuilding Co. v. Federal Bridge & Structural Co. (C. C. A.) 280 F. 292, 295; Procter & Gamble Co. v. Powelson (C. C. A.) 288 F. 299, 307.

No error, appearing on the record, the judgment of the court below must be affirmed.

The decree of the District Court is affirmed, with costs in this court.

ANDERSON, Circuit Judge (dissenting).

In my view, the majority opinion does not disclose the real merits of this case. I think the plaintiff was a victim of fraud, and is entitled to a remedy in this suit, properly amended. The facts found by the court are, in outline, as follows:

In 1922 Keene bought on the west side of lower Main street about 32 acres of land for $7,500, intending to use it for a playground; but, for some undisclosed reason, it did not improve and use it for that purpose. In April, 1924, the city government authorized the sale of this land. Through an agent of the city, one Aldrich, it sold it to the plaintiff, for $8,500, on September 12, 1925. Prior to the sale, the mayor represented to Aldrich, and through Aldrich to the plaintiff, that the land could be effectively sewered. In fact, a large share of the land, nearly 28 acres, was low land, near the Ashuelot river, which is there and for some miles below a very sluggish stream. Through a corner of

the land runs a branch of the Ashuelot, coming steeply down from the hills. In nearly every spring the ice in this branch breaks up earlier than in the sluggish river into which the branch empties and backs up on most of this land. The result is the annual or periodical flooding of much of the low land with ice and water, making it entirely unfit for residential purposes. The court below found that the city was charged with knowledge that the land was being purchased by a development company to be plotted and offered to the public for residential purposes; that, "so far as its appearance at the time of year when purchased, it was suitable for the purposes for which it was bought. * * * I do not find that the plaintiff is charged with any knowledge that the land it was purchasing was unfit for residential purposes * * * "; that sewers, if constructed, "would not solve the problem of high water that is bound to recur from ice jams and freshets." "There were no spoken misrepresentations at the time of the sale, *but the whole truth was not told.*" (Italics mine.)

The plaintiff proceeded with its plan of developing the land, and expended in all a little over $13,000. The court finds that, on the basis of acreage, the south or unfit portion is 82 per cent. of the whole: "Allocating 82 per cent of the total cost to the south portion makes its cost $10,705.85. The total cash received on four lots deeded is $1,521.56. The total cash received on sales of the south portion is $3,171.56."

Under an act of the New Hampshire Legislature (Pub. Laws 1926, c. 42, §§ 48–68), the city passed a zoning ordinance, becoming effective January 3, 1927. Under this ordinance, the south portion of the tract purchased (82 per cent.) was made subject to a provision that no permit to build thereon should be granted without the allowance of a board of adjustment. In practice, the board refused to grant such permits, and the court finds that this caused lapses of contracts made for sales in that portion, and that the ordinance as actually applied "has destroyed the marketability of the lots." The court concludes: "In view of the fact that the City of Keene was the grantor and sold plaintiff the land knowing the business in which the plaintiff was engaged and the purpose for which the land was purchased, it has given the plaintiff a pretty raw deal, even though it may have kept within its legal rights." The other findings of the court show that in giving this "raw deal" the city did *not* keep "within its legal rights."

Turning now to the pleadings, the bill sets up, in its third paragraph, that the property was bought, with the knowledge of the defendant, to be developed and sold for residential purposes, that the city represented that it was fit for such purposes, and that there was nothing in the nature of the land to make it apparent to the plaintiff that it was unfit for that purpose. It then sets up the passage of the ordinance and the effect thereof, as administered, to prevent further sales for residential purposes and to cause a lapse of contracts already made for such sales. It alleges its attempt to procure such amendment of the ordinance as to permit the plaintiff to proceed with the development and sale of the property purchased, and the defendant's refusal thereof. The prayers are that the ordinance be held unconstitutional and the defendant enjoined from enforcement thereof, and *"to account to the plaintiff for all loss, damage and expense resulting to the plaintiff by reason of the wrongful acts of the defendant in the premises; and (4th) For such other relief as may be just."*

Damages because the city had sold land for residential purposes, and had then made it legally impossible to use it for such purposes, is the gist of the bill. This falls little short of alleging fraud, though not of the exact nature found by the court.

After the court's opinion, filed September 26, 1929, the plaintiff, on October 8, 1929, filed the following motion to amend:

"Respectfully represents the plaintiff in the above-entitled action that up to the time of trial it had not been informed, and did not realize, that the land in question in this case was subject to periodical flooding to render it unfit for residential purposes, and the case was tried by the plaintiff on the theory that said land was fit for residential purposes; that the defendant introduced evidence tending to show that the land in question was unfit for residential purposes, and that it induced or allowed the plaintiff to purchase said premises for residential purposes, knowing that it was unfit for such purposes, and that the plaintiff was purchasing it for, and under the belief that it was fit for, residential purposes; that justice and equity require that the plaintiff be now allowed to amend its bill of complaint to incorporate therein allegations supported by the evidence introduced at the trial.

"Wherefore, the plaintiff moves that it be allowed to amend its complaint by substituting in place of paragraph three thereof a new paragraph as follows:

"3. At the time of the sale by the defendant to the plaintiff the defendant knew that the property sold was to be surveyed and

platted by the plaintiff and divided into lots of land to be sold by the plaintiff for residence purposes. The defendant knew that said land was subject to periodical flooding and was not fit for residence purposes. There was nothing in the nature of the land itself to indicate to the plaintiff that it was subject to periodic flooding and/or unfit for residence purposes, and the plaintiff did not know, and is not chargeable with knowledge, that the land was subject to periodic flooding and/or unfit for residence purposes and purchased the same under the mistaken impression that it was not subject to periodic flooding and was fit for residence purposes; and the defendant as an inducement to the plaintiff to purchase said premises represented to the plaintiff that said land could be sewered and that the water never rose high enough to affect the availability of the land for residence purposes. Under these circumstances the defendant knew or should have known that the plaintiff would understand from its statement that said premises could be sewered and that the water would sometimes back up into the low places on the banks of the stream, that the land was not subject to periodic flooding and that it was fit for residential purposes whereby it was and became the duty of the defendant to fully disclose to the plaintiff the fact that said premises were subject to periodic flooding and were unsuitable for residential purposes. The defendant on the contrary, however, wholly refrained from making such disclosure and fraudulently concealed from the plaintiff the fact that said premises were subject to periodic flooding and unfit for residential purposes and by representing that said premises could be sewered and that the water sometimes backed up into the gullies at the edge of the stream, told the plaintiff a half truth, which, under the circumstances, was an untruth, and negligently and/or fraudulently misrepresented to the plaintiff that said premises were not subject to periodic flooding and were fit for residential purposes, and induced or allowed the plaintiff, acting in repliance [sic] on the defendant's concealment and misrepresentation as aforesaid, to purchase said premises in the mistaken belief that they were fit for residential purposes."

On November 26, 1929, the court denied this motion, saying: *

"It appears * * * that such amendment is improper and unnecessary at this stage of the proceedings. If the case is transferred on appeal the original complaint, answer, transcript of the evidence and findings of the court will be before the Court of Appeals. That court can determine the issues raised and the evidence upon which the findings of fact have been made."

It is important to note that this is not a clear denial of the amendment, in the exercise of the judicial discretion of the trial court. Apparently, the learned District Judge intended this court to deal with the entire record, including the allowance of the amendment, if this court should be of opinion that it or any other amendment was necessary to work out justice to the parties in this case.

But, if this doubtful ruling be construed as a denial of the amendment in the discretion of the court, the question arises whether this was a sound and wise exercise of discretion. The situation is unusual and peculiar, because of the court's finding of fraud, grounding relief, in a suit at law, closely analogous to the relief sought by the bill.

The Act of March 3, 1915, c. 90, 38 Stat. 956, now section 274a of the Judicial Code, 28 USCA § 397, is mandatory in its requirement that, when a suit is improperly brought in equity, the court *"shall order any amendments to the pleadings which may be necessary to conform them to the proper practice."*

In Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 241, 43 S. Ct. 118, 120, 67 L. Ed. 232, the court analyzes this statute, and Taft, C. J., says:

"Under equity rule No. 22 [28 USCA § 723], a suit in equity which should have been brought at law *must be transferred to the law side of the court."* (Italics mine.)

To dismiss a bill in equity when there is or may be a remedy at law is no longer within the discretion of any federal court. The day is now happily past when a case can be thrown out of a federal court because brought on the wrong side of the court. But exactly that is the result of the majority opinion, in which it is said: " * * * Nor does it appear that the plaintiff's remedy at law for the damages, if it has one, is not adequate."

The cases cited at the end of the majority opinion in support of this proposition— "This court will not compel a litigant to transfer its action from equity to law, or vice versa, against its will"—do not sustain the proposition. If they do, they would not bind this court; the statute, as construed by the Supreme Court in Liberty Oil Co. v. Condon Bank, supra, does bind this court. The vital and important question now presented, in my view justifying this dissent, is whether the remedial act of 1915 is to be enforced in

this circuit, or whether we are to remain embedded in the outworn creed of the past.

It is also worth noting that, under the Conformity Act (Rev. St. § 914, 28 USCA § 724), the pleading and practice in this case must conform to New Hampshire law, where amendments, in form and in substance, have long been liberally allowed. See Sanborn v. Railroad, 76 N. H. 65, 79 A. 642, and cases cited, an opinion by Judge Bingham, now a member of this court.

It seems to me clear that, on the findings of the court already made, a clear case of fraud is made out: the city knew that this land was unfit for residential purposes; it directly represented that the land could be sewered; the court finds that it could not be effectively sewered; it knew, and the court finds that the defendant did not know, and was not chargeable with knowledge, that the land was unfit for residential purposes. (For an analogy of implied warranty of fitness in a sale of personal property, compare Pub. Laws of N. H. c. 166, § 15, subd. I.) The zoning ordinance became immaterial except (as administered) it furnished a legal prohibition to selling the land, for a purpose for which it was not in fact fit. This was an eminently proper exercise of the city's police powers in order to protect possible purchasers from being victimized—as the plaintiff was victimized by the city itself. To repeat—the findings of the court made out a plain case for damages in a suit at law. The plaintiff did not after full trial "invent some new and plausible claim." It simply asked to have the pleadings conform to the actual findings of the court—a very different thing, though necessitating a transfer to the law side of the court.

The amendment should be allowed and the case ordered transferred to the law side of the court. Of course, the parties may choose to waive their constitutional right to a jury and submit the case to the court on the present evidence, supplemented by any further evidence either party may desire to offer.